STATE of Wisconsin, EX REL. R.A.S., Plaintiff-Respondent,

v.

J.M., Jr., Defendant-Appellant.†

Court of Appeals

*No. 82-1473. Submitted on briefs June 14, 1983.—
Decided July 19, 1983.*

---

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Leonard G. Adent* of *Adent, Carlson & Associates* of Waukesha.

For the plaintiff-respondent the cause was submitted on the brief of *Linda McKenzie Georgeson,* assistant corporation counsel of Waukesha.

Before Scott, C.J., Brown and Wedemeyer, JJ.

BROWN, J.    The issue is whether the advancement of science, the HLA test, in this instance, can work to affect the finality of a long-decided paternity determination.[1] We hold that the recent advent of HLA testing is not grounds for relief from a pre-HLA judgment and affirm.

J.M., Jr. was found to be the father of a certain minor child following trial by jury on August 18, 1971.  Following entry of judgment by the trial court, support payments were ordered.  Over the next ten years, arrearages accrued.  All during this time, J.M. claims he continued to deny paternity.  He was held in contempt on April 1, 1982 and was sentenced to serve thirty days in jail.  In response, he filed motions seeking a stay of sentence and relief from the original paternity judgment pursuant to sec. 806.07(1) (g), Stats., which reads as follows:

[1] Because this is a policy question affecting a choice between the public interest in the finality of judicial decisions on the one hand and a litigant's wish for a less speculative finding of paternity on the other hand, we certified this question for review on April 28, 1983.  The supreme court declined to take jurisdiction on May 23, 1983.

(1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

. . . .

(g) It is no longer equitable that the judgment should have prospective application;

. . . .

J.M.'s motion was based upon the fact that the relatively new HLA (Human Leukocyte Antigen test of blood tissue) would allow a near conclusive resolution of the paternity question. Under the new procedure, retesting would now either show him to be the father or would exclude him entirely. J.M. asserted that the state of the art just ten years before caused the jury during that time period to base its decision on more speculative facts. The trial judge denied the motion, citing the interest in finality of judgments and reasoning, in effect, that granting the motion would open up a "Pandora's Box."

Undoubtedly, the HLA test is a new procedure which might have constituted a defense had it been widely used ten years ago.[2] The HLA test is a scientific progression which has become a powerful tool in today's paternity actions. In the great majority of cases where the accused is innocent, the alleged father will be excluded. *J.B. v. A.F.*, 92 Wis. 2d 696, 700 n 2, 285 N.W.2d 880, 881–82 (Ct. App. 1979).

Yet, we are constrained to agree with the trial court's reasoning. In few situations can relief be based upon an evidentiary tool which has come into existence after trial. Such a procedure would allow all trials perpetual life. The law does not favor repeated litigation of the same issue. *Wittke v. State ex rel. Smith*, 80 Wis. 2d 332, 342, 259 N.W.2d 515, 519 (1977). Public policy and ef-

---

[2] It cannot be said that J.M. could have availed himself of the HLA test at the time of trial. The test came into widespread use years after the trial.

fective judicial administration require that controversies once decided on their merits remain in repose. *Id.*

In this case, rights were vested by a jury and were approved by decree of the court; rights were not vested solely because of a less than exclusive blood test. To allow jury findings of fact to be cast into doubt by newly discovered scientific testing would be contrary to society's interest in termination of litigation. We foresee that were we to rule otherwise, men who long ago were determined to be fathers would flood the courts with requests to reopen aged judgments. It is not implausible to also suggest that women who were unsuccessful in an attempt to judicially determine the father of their child would avail themselves of a motion to reopen litigation. Public policy and efficient administration of justice would not be served.[3]

*By the Court.*—Order affirmed.

---

[3] J.M. claims this court can write an opinion which would allow J.M. himself to pursue his theory without allowing other judicially determined fathers to use the same hypothesis. Without going into J.M.'s prolix argument, it is enough to say that the issue, in this case, is broadly based so as to affect a great many pre-HLA cases. J.M.'s case cannot be neatly separated from the others.