122 Wis.2d 536 (1985)
363 N.W.2d 419
STATE of Wisconsin EX REL. M.L.B., Plaintiff-Respondent,
v.
D.G.H., Defendant-Appellant-Petitioner.
No. 83-1348.
Supreme Court of Wisconsin.
Argued January 2, 1985.
Decided February 27, 1985.
*537 For the defendant-appellant-petitioner there was a brief by Jerald P. Donohue and Donohue & Donohue, S.C., Fond du Lac, and oral argument by Jerald P. Donohue.
For the plaintiff-respondent there was a brief by Joseph H. Pomeroy and Colwin, Fortune, Colwin & Pomeroy, S.C., Fond du Lac, and oral argument by Joseph H. Pomeroy.
SHIRLEY S. ABRAHAMSON, J.
This is a review of an unpublished decision of the court of appeals filed on *538 May 9, 1984, affirming an order of the circuit court for Fond du Lac county, Eugene F. McEssey, Circuit Judge, which in turn refused reconsideration of a prior order. This prior circuit court order denied D.G.H. relief from an out of wedlock agreement and from orders directing him to support a child born out of wedlock. The circuit court held that D.G.H. failed to assert his claim for relief within the one-year time limitation prescribed by sec. 806.07 (2), Stats. 1981-82, for causes of action falling within sec. 806.07(1) (a), (b), or (c) and that he was not entitled to relief under sec. 806.07(1)(g) or (h), to which the one-year limitation does not apply. The court of appeals affirmed the circuit court. We reverse the decision of the court of appeals and remand the cause to the circuit court.
This appeal arises from an out of wedlock agreement (hereinafter, agreement) which D.G.H. signed in open court in April, 1978. See sec. 52.28, Stats. 1977. According to the terms of the agreement, D.G.H. and M.L.B., the female complainant, agreed that D.G.H. was the father of M.L.B.'s child born out of wedlock on February 16, 1977, and that D.G.H. would provide support and maintenance to the child as the court might thereafter determine. There is no judgment or order in this record determining the identity of the father. The agreement was approved by the district attorney's office and the circuit judge and filed with the clerk of court on April 3, 1978. The agreement specified that since D.G.H. was then unemployed, his responsibility for support and lying-in expenses would be temporarily deferred. In April, 1981, D.G.H. reported to the Fond du Lac Special Investigator's Office that he was currently employed, and on April 29, 1981, the circuit court for Fond due Lac county, acting pursuant to the admission of paternity in the agreement and the other terms of the agreement, ordered D.G.H. to pay the sum of $5,000 for lying-in expenses *539 and past support payable at the rate of $50 per month. Other orders relating to support were entered, the last on March 22, 1982.
On June 1, 1982, D.G.H. began proceedings to set aside the agreement. The child, through his guardian ad litem, objected. The only issue the parties raised before the circuit court, the court of appeals, and this court is whether D.G.H. is entitled to relief from the agreement under sec. 806.07, Stats. 1981-82, which prescribes circumstances under which the circuit court may relieve a party from a judgment, order or stipulation.
Sec. 806.07 provides as follows:
"806.07 Relief from judgment or order. (1) On motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
"(a) Mistake, inadvertence, surprise, or excusable neglect;
"(b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);
"(c) Fraud, misrepresentation, or other misconduct of an adverse party;
"(d) The judgment is void;
"(e) The judgment has been satisfied, released or discharged;
"(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;
"(g) It is no longer equitable that the judgment should have prospective application; or
"(h) Any other reasons justifying relief from the operation of the judgment.
"(2) The motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1)(b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, *540 or to set aside a judgment for fraud on the court."
D.G.H. grounds his request for relief on the following assertions set forth in his petition and in his offer of proof:[1] (1) M.L.B. had, prior to the execution of the agreement, falsely stated in a questionnaire dated October 14, 1976, and filed with Fond du Lac County's Special Investigator's Office that she had had intercourse with no one but D.G.H. for about a year before the questionnaire was executed;[2] (2) M.L.B. now admits that she had intercourse with a male other than D.G.H. approximately 10 times between April 21, 1976 and June 20, 1976; (3) D.G.H. (born on September 8, 1959) was 16 years old and a sophomore in high school when the child was conceived, was 17 years old when the child was born, and was an 18 and one-half-year-old unemployed high school graduate when he signed the agreement; (3) D.G.H. was not represented by counsel when he signed *541 the agreement;[3] (4) D.G.H. could not remember whether he had been told that he had a right to an attorney or a blood test; (5) no blood test was conducted before D.G.H. signed the agreement; (6) the blood tests conducted on May 18, 1982, positively excluded D.G.H. as the father of the child.
The circuit court denied D.G.H.'s petition, holding that the bases for D.G.H.'s claim for relief were fraud, mistake, or newly discovered evidence within sec. 806.07(1) (a), (b), and (c) and that D.H.G.'s petition was not timely since it was not brought within the prescribed one-year time period set forth in sec. 806.07(2). Four years had elapsed since the agreement and 13 months since the first order enforcing the agreement. The circuit court further held that D.G.H. is not entitled to relief under sec. 806.07(1)(g) or (h), which allow a motion for relief to be raised within a "reasonable time" (which may be longer than one year), reasoning that relief cannot be had under (g) or (h) when the bases for relief asserted fall under subsections (a), (b) or (c). In other words, the circuit court held, and the court of appeals agreed, that grounds for relief under subsections (g) and (h) must be based on reasons other than those specifically set out in subsections (a), (b), and (c).[4]
A circuit court's order denying a motion for relief under sec. 806.07 will not be reversed on appeal unless there has been a clear abuse of discretion. Shuput v. Lauer, 109 Wis. 2d 164, 177, 325 N.W.2d 321 (1982); Family Savings Loan Ass'n v. Barkwood Landscaping Co., Inc., 93 Wis. 2d 190, 204, 286 N.W.2d 581 (1980); Hollingsworth v. American Finance Corporation, 86 Wis. *542 2d 172, 184, 271 N.W.2d 872 (1978). An appellate court will not find an abuse of discretion if the record shows that the circuit court exercised its discretion and that there is a reasonable basis for the court's determination. Howard v. Duersten, 81 Wis. 2d 301, 305, 260 N.W.2d 274 (1977). The term "discretion" contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards. Shuput v. Lauer, 109 Wis. 2d 164, 177-78, 325 N.W.2d 321 (1982).
The issue presented in this case is whether the circuit court rested its decision upon an error of law, namely an incorrect interpretation of sec. 806.07 and thereby abused its discretion. State v. Hutnik, 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968). We therefore turn to an analysis of sec. 806.07.
Sec. 806.07 attempts to achieve a balance between the competing values of finality and fairness in the resolution of a dispute. See Graczyk, The New Wisconsin Rules of Civil Procedure, Chapters 805-807, 59 Marq. L. Rev. 671, 727 (1976). The court must construe section 806.07 to achieve this balance. For assistance in construction of sec. 806.07, we refer to Wisconsin cases interpreting this section and to federal cases interpreting Rule 60(b) of the Federal Rules of Civil Procedure upon which sec. 806.07 is based.[5]
*543 Subsections (a) through (f) of sec. 806.07(1) enumerate relatively specific grounds warranting relief from a judgment, some of which must be raised within a specified time period. D.G.H. asserts that he is entitled to relief under either subsection (g) or (h) of sec. 806.07 (1) and that his petition was brought within a reasonable time. Sec. 806.07 (2), Stats. 1981-82.
Subsection (g) provides that a court may relieve a party from a judgment if "it is no longer equitable that the judgment should have prospective application." The parties have not directed this court to any Wisconsin cases construing 806.07(1) (g)[6] or to any federal cases construing its analogue Rule 60(b) (5). Commentators *544 have concluded that Rule 60(b) (5) was intended to preserve for the courts the power to alter final judgments having an ongoing impact when the facts as determined in the original action have changed to a degree that the final judgment must also be changed to comport with the new conditions. The chief use of Rule 60(b) (5) apparently has been to obtain relief from a permanent injunction which has become unnecessary due to a change in conditions. Relief from the injunction does not challenge the propriety of the original judgment, but rather is a recognition that it would be inequitable for the original judgment to be enforced prospectively. 7 Moore's Federal Practice, par. 60.26[4] (9/83); 11 Wright and Miller, Federal Practice and Procedure: Civil, sec. 2863, pp. 204-211 (1973).
In this case, D.G.H. is seeking relief not only from the prospective operation of the support orders but also from the "original judgment," that is, from his agreement that he is the father. This case, unlike a permanent injunction case, does not involve a change of the conditions or the operative facts occurring after the "judgment." Rather, D.G.H. and the court are now aware of facts previously unknown to them. This is not a case where changes make prospective application of a previously proper judgment inequitable but rather a case where new information makes the original "judgment" inequitable. We therefore conclude that this case does not appear to fall within the usual circumstances warranting relief under subsection (g). Thus, the focus of our analysis should be on sec. 806.07(1) (h) and its federal counterpart, Rule 60(b) (6).
Subsection (h) declares that the court may grant relief "for any other reasons justifying relief." Subsection (h) is written in broad terms and obviously extends the grounds for relief beyond those provided for in the preceding subsections: under subsection (h) the ground for *545 granting relief is "justice" and the time for bringing the motion is "reasonable." One question that arises is whether this construction of subsection (h) undercuts the grounds and time limitations set forth in the other provisions and gives the circuit court unlimited discretionary power except for the "reasonable time" restriction. In other words, it is unclear from the language of (h) when and how (h) is to apply and what is the relation of (h) to subsections (a), (b), and (c) of sec. 806.07 (1).
The circuit court and the court of appeals, relying on the federal interpretation of Rule 60(b) (6), construed subsection (h) as follows: subsection (h) and subsections (a), (b), and (c) are mutually exclusive; subsection (h) is unavailable when the grounds for relief fall within subsections (a), (b), or (c); and subsection (h) is not an easy escape route from the one-year time limit imposed by sec. 806.07(2) upon motions under subsections (a), (b), and (c). We do not dispute the correctness of this statement interpreting subsection (h), insofar as it goes.
The circuit court's interpretation of the proper application of sec. 806.07(1) (h) and Rule 60(b) (6), however, is incomplete. The circuit court's interpretation, if applied literally, might render subsection (h) superfluous since practically every conceivable ground for relief may arguably fall within a subsection other than (h). The circuit court failed to acknowledge that although federal courts state that subdivisions (1), (2), and (3) are mutually exclusive from subdivision (6), federal courts have nevertheless recognized that a set of factual circumstances which may support a claim under (1), (2), or (3) may also be used to support a claim under subdivision (6), if the circumstances of the case are extraordinary and justify relief. To allow relief for cases which may support a claim under subsections (1), (2), or (3) *546 without abrogating the one-year time limitation, the federal courts have developed the "extraordinary circumstances" test.
The leading cases in which the United States Supreme Court has construed Rule 60(b) (6) and set forth the "extraordinary circumstances" test are Klapprott v. United States, 335 U.S. 601, modified 336 U.S. 942 (1949), and Ackermann v. United States, 340 U.S. 193 (1950).
The petitioner in Klapprott, supra, had been granted U.S. citizenship in 1933 after taking an oath renouncing allegiance to Germany, his native country. In 1942 the United States attorney filed a complaint in a federal district court to cancel Klapprott's certificate of naturalization. The complaint alleged that Klapprott's oath of allegiance was false, as evidenced by his writings, speeches, and organizational membership. Klapprott was served with notice of the denaturalization proceedings but was arrested on federal criminal charges prior to the 60-day limit for answering. He alleged that he could not afford a lawyer and that his letter to the American Civil Liberties Union requesting a free lawyer had been confiscated by federal authorities and never mailed. While he was in a New York jail on the criminal charges, a default judgment was entered against him in the denaturalization proceedings in the New Jersey federal court. No hearings or evidence preceded the judgment, which had the effect of canceling his certificate of naturalization. Klapprott claimed that a lawyer appointed to represent him in the criminal case agreed to assist him by attending the New Jersey proceedings but reneged on the promise. More than four years later and while still a federal prisoner, Klapprott filed a petition pursuant to Rule 60(b) requesting that the default judgment be set aside.
The government argued that since Klapprott's petition was basically a claim of excusable neglect in not attending *547 the denaturalization proceedings, it should be treated under the provision in Rule 60(b) for setting aside a judgment for excusable neglect. Since that provision has a time limitation of one year, the government contended that Klapprott should be barred from bringing the action.
The Court rejected the government's argument and found that Klapprott's petition set forth circumstances that, if proved, would justify relief under the "any other reason" clause of Rule 60(b) (6). The case was remanded to the district court with directions to receive evidence on the truth or falsity of the allegations contained in Klapprott's petition to vacate the judgment. 336 U.S. 942.
This decision was based on the Court's perception that "petitioner's allegations set up an extraordinary situation which cannot fairly or logically be classified as mere `neglect' on his part." Id. at 613. The Court stated that "of course, the one year limitation would control if no more than `neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad `any other reason' clause . . . ." Id. at 613.
The year following the Klapprott decision, the United States Supreme Court was again confronted with a case in which the petitioner was seeking relief under 60(b) (6). This time the Court concluded that the circumstances were not extraordinary and held that relief should not be granted.
In Ackermann v. United States, 340 U.S. 195 (1950), the petitioner, like Klapprott, had been granted U.S. citizenship which was challenged by the U.S. Government on the basis of fraud. The petitioner, his wife, and his brother-in-law were represented by counsel, tried in consolidated proceedings, and had separate judgments canceling their citizenship entered against them. The brother-in-law appealed to the court of appeals, and upon stipulation with the United States attorney, the case against him was reversed and the complaint dismissed. *548 The Ackermanns did not appeal after their attorney informed them that the costs of the appeal would require them to sell their home. After the time for appeal had expired, they were interned and subsequently ordered to leave the country or be deported. The Ackermanns then claimed that in deciding not to appeal they had been influenced by a trusted official of the Immigration and Naturalization Department who told them to "hang on to their home" and that they would be released at the end of the war.
The Court compared these allegations with those set forth in Klapprott and held that the Ackermann case did not present the kind of extraordinary circumstances required for Rule 60(b) (6) relief. In Ackermann, unlike in Klapprott, the claimant hired counsel and upon advice of counsel made a voluntary, deliberate, free, untrammeled choice not to appeal.
The Supreme Court was concerned in Klapprott and in Ackermann with how to preserve the limitations on the district court's powers set forth in Rule 60(b) and yet to interpret subdivision (6) in such a way as to provide relief when the circumstances justified relief. These cases provide some guidance to the interpretation of subdivision (6), but they do not provide any bright lines.
The lower federal courts have taken divergent approaches to the balancing of the sometimes conflicting goals of fairness and finality implicit in Rule 60(b) as a whole and in subdivision (6). Given the federal balancing approach, any attempt to generalize from the federal cases is necessarily hampered by the different settings and types of judgments involved and by varying notions of finality and its importance in various contexts. A further difficulty encountered in reviewing the federal cases interpreting Rule 60(b) (6) is the cursory analysis often applied by the courts.
Despite the fact that the courts state that subdivision (6) is deemed exclusive of other provisions, the application *549 of the exclusivity doctrine varies. Two approaches to the mutual exclusiveness of the subdivisions of 60(b) can be discerned.
Some courts say that the strict mutual exclusiveness interpretation is required to avoid rendering meaningless the term "other" in the "any other reason" clause of Rule 60(b) (6). See Comment, Rule 60(b): Survey and Proposal for General Reform, 60 Calif. L. Rev. 531, 559 and n. 188 (1972); Kane, Relief from Federal Judgments: A Morass Unrelieved by a Rule 30 Hastings L.J. 41, 47, 62-67 (1978); 11 Wright & Miller, Federal Practice and Procedure: Civil sec. 2864, p. 217 (1973).
Other federal courts, echoing the principle of mutual exclusivity, have refused to apply the principle rigidly; they either expressly or in result interpret Rule 60(b) (6) as granting the district court power to prevent extreme hardship or injustice even when the petition arguably falls within subdivisions (1), (2), or (3) of Rule 60(b). These cases have applied the "extraordinary circumstances" test. See Comment, Rule 60(b): Survey and Proposal for General Reform, 60 Calif. L. Rev. 531, 560, n. 195 (1972); Kane, Relief from Federal Judgments: A Morass Unrelieved by a Rule, 30 Hastings L.J. 41, 50-62 (1978); 11 Wright & Miller, Federal Practice and Procedure: Civil sec. 2864, pp. 219-23 (1973).
We are persuaded that the "extraordinary circumstances" test is an appropriate way to approach claims for relief under sec. 806.07(1) (h). Since almost every conceivable ground for relief may arguably come within subsections (a) through (g), a strict mutual exclusivity approach might render subsection (h) superfluous. Subsection (h) should be applied when the petition alleging factors arguably within (a), (b), or (c) also alleges extraordinary circumstances that constitute equitable *550 reasons for relief. This is the test set forth in Klapprott where the petitioner averred "extraordinary circumstances" that demonstrated more than "mere `neglect' on his part." Klapprott v. United States, supra, 335 U.S. at 613. We are mindfuland the circuit courts should be mindfulthat finality is important and that subsection (h) should be used sparingly. Subsection (h) should be used only when the circumstances are such that the sanctity of the final judgment is outweighed by "the incessant command of the court's conscience that justice be done in light of all the facts." Bankers Mtg. Co. v. United States, 423 F.2d 73, 77 (5th Cir.), cert. denied, 399 U.S. 927 (1970) (emphasis in original).
The Wisconsin Court of Appeals similarly construed sec. 806.07(1) (h) in Ennis v. Ennis, 88 Wis. 2d 82, 276 N.W.2d 341 (Ct. App. 1979). In Ennis, the plaintiff sought to reopen a divorce stipulation entered three years earlier, claiming that the defendant fraudulently testified at trial by referring to "net" income figures as "gross" income figures. The court of appeals held that because the motion for relief was grounded exclusively in fraud, within the meaning of sec. 806.07(1) (c) and was subject to the one-year limitation of sec. 806.07(2), the motion coming three years after judgment should have been dismissed.
Nevertheless, having determined that the motion for relief was grounded in fraud, the court of appeals did not stop there. Rather, allowing the possibility of relief for other reasons, it went on to consider whether exceptional circumstances might justify relief under sec. 806.07(1) (h). After noting that sec. 806.07(1) (h) is based on Rule 60 of the Federal Rules of Civil Procedure, and that it concurred with the federal interpretation that this provision "must be liberally construed to allow relief from judgments `whenever such action is appropriate to accomplish justice,'" id. at 91, the court of appeals examined the facts of the case to determine whether there were *551 grounds for relief under subsection (h). The court of appeals concluded that the facts in that case provided no basis for relief under sec. 806.07(1) (h).
While the Ennis court does not grant relief under sec. 806.07(1) (h), neither does it support the child's assertion that the court has no power to grant relief from a judgment, when the petition brought over one year from the judgment is grounded in mistake, fraud, or newly discovered evidence. Ennis demonstrates that the circuit court can consider a motion under sec. 806.07(1) (h) when the facts also fit within sec. 806.07(1) (a), (b), or (c) to determine if exceptional circumstances bring it within sec. 806.07(1) (h).
Two cases of this court involving sec. 806.07(1) (h) appear to support the Ennis interpretation. See In Matter of Estate of Smith, 82 Wis. 2d 667, 672-74, 264 N.W.2d 239 (1978), and Conrad v. Conrad, 92 Wis. 2d 407, 418, 284 N.W.2d 674 (1979).[7] While both cases involve petitions sought within three months of judgment and neither case provides detailed discussion or analysis of sec. 806.07(1) (h), the court's language does suggest a potential breadth of application of sec. 806.07(1) (h).[8]
*552 On the basis of the federal cases interpreting Rule 60(b) (6) and the Wisconsin cases, we conclude that the subsections of sec. 806.07(1) should be treated as mutually exclusive to the extent that a party should not be allowed to circumvent the one-year time limit applicable to subsections (a), (b) and (c) by recharacterizing her or his claim as a claim under subsection (h). Nevertheless subsection (h) permits a circuit court to grant relief, even if the fact situation may give rise to a claim under subsections (a), (b) or (c), if extraordinary circumstances justify relief.
As might be expected, the federal and state cases do not reveal a complete list of what facts constitute extraordinary circumstances. Because subsection (h) invokes the sensibilities of the court, the court must consider a wide range of factors, and it is difficult to articulate the criteria on which the finding of extraordinary circumstances is based. The court should not interpret extraordinary circumstances so broadly as to erode the concept of finality, nor should it interpret extraordinary circumstances so narrowly that subsection (h) does not provide a means for relief for truly deserving claimants. A final judgment should not be hastily disturbed, but subsection (h) should be construed to do substantial justice.
In exercising its discretion, the circuit court should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments, including the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious *553 defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.
As indicated by the preceding discussion, the approach adopted by the court today is consistent with the approach taken in Klapprott, in Ackermann, and in prior Wisconsin cases. Our decision is not inconsistent with the federal cases cited by the child. In Petry v. General Motors Corporation, Chevrolet Division, 62 FRD 357 (E.D. Pa. 1974), and in Rinieri v. News Syndicate Co., 385 F.2d 818 (2d Cir. 1967), upon which the child relies, the motion fell squarely within one of the first three subsections of Rule 60(b), and there were no "extraordinary circumstances" which would justify application of Rule 60(b) (6)). Though the court in United States v. Erdoss, 440 F.2d 1221 (2d Cir. 1971), stated that Rule 60(b) (1) and 60(b) (6) are mutually exclusive, the case involved defendants who were found to have "pursued an intelligible, purposeful course of conduct" in not opposing the original entry of judgment from which they later sought relief. Since the conduct leading to the default judgment did not reach the level of "excusable neglect" contemplated by 60(b) (1), the Erdoss court need not have considered harmonizing the provisions of (b) (1) and (b) (6).
Since the proper test under subsection (h) for a claim that in part sounds in subsection (a), (b), or (c) but is brought outside the one-year time period is whether there are extraordinary circumstances justifying relief in the interest of justice, the task the circuit court in this case should have performed was to evaluate the facts set forth in the petition to determine whether, if true, they would constitute extraordinary circumstances justifying relief. If the circuit court concluded that they did, the circuit court then should have held a hearing to determine the truth of the allegations.
There are factors in this case which, if proved, are extraordinary circumstances justifying relief upon terms *554 to be set forth by the circuit court "as are just." Sec. 806.07(1), Stats. 1981-82. M.L.B. lied. On the basis of M.L.B.'s lie, D.G.H. agreed to be designated as the father. At that time D.G.H. was 18 years old, unemployed, and had no advice of counsel. No blood tests were taken. D.G.H. cannot remember being informed that he had a right to a blood test or that he could consult an attorney to discuss the matter prior to his signing of the paternity agreement. Recent blood tests conclusively reveal that D.G.H. is not the father. A court's failure to reopen the issue of paternity has significant future ramifications for D.G.H. and the child.
In this case the circuit court found that D.G.H.'s claim for relief, sounding as it does within sec. 806.07(1) (a), (b), or (c), was excluded from review under subsection (h). We hold today that even if a claim sounds in sec. 806.07(1) (a), (b), or (c), it can be granted under subsection (h), if the circuit court concludes that extraordinary circumstances exist which justify relief from a prior judgment, order or stipulation. Accordingly, we conclude that the case must be remanded to the circuit court for a hearing on the truth of D.G.H.'s allegations and for a determination of whether on the basis of the facts proved the circuit court should relieve D.G.H. of the agreement and, if so, upon what terms.
Although the circuit court concluded that D.G.H.'s claim for relief was barred, the circuit court nonetheless considered the equities of the case. The review mandated by the record presently before the court and by our decision today requires that upon remand the circuit court not only hold a hearing on the petition but also make a more extensive analysis of the equities than it previously made.
The circuit court summarily concluded that D.G.H.'s delay in bringing the present action made it virtually impossible that the biological father could be located. *555 The circuit court is correct in viewing the possibility of pursuing the true father as a relevant factor in whether to relieve D.G.H. of the agreement. Further consideration should be given to this issue upon remand. The statute of limitations for bringing a paternity action has not yet expired. On the one hand, since several years have passed, there is increased difficulty in establishing paternity. On the other hand, M.L.B. has named the other man with whom she had intercourse during the months before she met D.G.H. It is possible that the father might voluntarily assume parental responsibilities. Blood tests may prove persuasive even though, as the guardian ad litem argued on oral argument, M.L.B.'s credibility could be impeached in a paternity trial.
The circuit court appropriately considered the economic needs of the child but did not consider the emotional needs of the child. In light of the apparent exclusion of D.G.H. as biological father and the history of relations among D.G.H., M.L.B. and the child, it seems unlikely that D.G.H. will offer much emotional support for the child he believes is not his own.
The circuit court also failed to consider, in conjunction with the other circumstances existing in this case, the fairness to D.G.H. of binding him to a lifelong obligation to a child who might not be his own. Unlike other judgments which order a one-time payment of a sum of money, a determination of paternity has long-term prospective ramifications, including support orders, health insurance coverage, worker's compensation claims, survivor's benefits, and wrongful death claims.
Furthermore, a court's adherence to a paternity agreement entered into by an 18-year-old putative father, without counsel, without a trial, without a blood test, when a subsequent blood test offered in proof positively excludes the male as the father, might very well undermine the public's faith in our system of justice.
*556 Finally, granting relief in this case does not denigrate the legitimate public interest in finality of judgments. There was no adjudicated determination of paternity after an adversarial proceeding. The agreement was made under circumstances in which it is difficult to conclude that D.G.H. made a deliberate, conscious choice.[9] A support order in and of itself is not "final" in the sense that it can be changed as conditions change. The "finality" interest may thus be somewhat less in this case than in other cases.
The child's guardian ad litem directs this court's attention to State ex rel. R.A.S. v. J.M., 114 Wis. 2d 305, 338 N.W.2d 851 (1983). We grant that both R.A.S. and this case are paternity cases that present a "policy question affecting choice between the public interest in the finality of judicial decisions on the one hand and a litigant's wish for a less speculative finding of paternity on the other hand . . . ." Id. at 306, n. 1. The facts of this case, however, differ substantially from those in R.A.S.
The putative father in R.A.S., unlike D.G.H. in the present case, was apparently represented by counsel; there was a trial; paternity was decided by a jury; and there was no allegation of fraud on the part of the female complainant.
In the R.A.S. case, years after the trial, the male sought relief from the paternity determination and support orders, seeking a Human Leukocyte Antigen (HLA) test of blood tissue. The HLA test was developed after *557 the original paternity judgment. The court of appeals refused to relieve the male of the judgment, concluding that public policy and efficient administration of justice would not be served if jury findings were cast into doubt by facts discovered from new scientific techniques and if courts were flooded with requests to reopen aged paternity judgments which either confirmed or denied paternity.
This case, unlike the R.A.S. case, does not involve reopening a judgment on the basis of a technologically advanced blood test. The blood test recently administered in this case was available but not used when the agreement was executed. This case does not risk a flood of new litigation; the result in this case would be based on the extraordinary totality of circumstances which exist here. Rare circumstances of this type can be reviewed by the court under sec. 806.07(1) (h) without threatening the values underlying the doctrine of finality of judgments.
To determine whether a party is entitled to review under sec. 806.07(1) (h), the circuit court should examine the allegations in the petition with the assumption that all assertions contained therein are true. If the facts alleged in the petition constitute extraordinary circumstances justifying relief under subsection (h), a hearing shall be held on the truth or falsity of the allegations. After determining the truth of the allegations and upon consideration of any other factors bearing upon the equities of the case, the court shall decide what relief if any should be granted the claimant and upon what terms. United States v. Klapprott, 9 F.R.D. 282 (D. N.J. 1949). The court may grant relief upon such terms as are just. In the present case D.G.H. requests that he be relieved of future payments and obligations appurtenant to the challenged out of wedlock agreement. He also requests relief from liability for payment of the guardian ad litem fees. He is not requesting reimbursement of support payments already made.
*558 [4]
We hold that the circuit court abused its discretion by basing its discretion on an error of law, that is, on a misinterpretation of sec. 806.07, and in failing to hold a hearing at which evidence might be presented. Accordingly we reverse the decision of the court of appeals affirming the order of the circuit court and remand the cause to the circuit court for proceedings consistent with this opinion.
By the Court.The decision of the court of appeals is reversed; the order of the circuit court is reversed and the cause remanded to the circuit court.
NOTES
[1] The circuit court denied the petition without a hearing. During the proceedings on D.G.H.'s motion to reconsider the circuit court's order denying the petition, D.G.H. was permitted to make an offer of proof. D.G.H., M.L.B. and a doctor testified. D.G.H. asserts that the circuit court abused its discretion in failing to hold a hearing. The court of appeals held that there was no abuse of discretion; even if D.G.H. proved all the assertions, there could be no relief under sec. 806.07 because D.G.H.'s petition was not timely.
[2] In the questionnaire dated October 14, 1976, M.L.B. asserted that D.G.H. was the father of the child who was born February 16, 1977. She also stated that she and D.G.H. first met on June 5, 1976, and had intercourse about three weeks later. The date of her last menstrual period prior to the birth of the child was given as May 9, 1976; the date of the expected birth was given as February 13, 1977. On the questionnaire she responded to the question "Date of sexual relations with other, if any" in the following manner: "Almost a year ago."

According to the record, the baby's weight at birth was 7 lb. 9 oz.
[3] Sec. 767.52, Stats. 1981-82, which was not then in effect, provides for appointment of counsel for indigent putative fathers.
[4] D.G.H. does not assert that his claim does not fall within subsections (a), (b), or (c).
[5] Sec. 806.07 "is substantially equivalent to Federal Rule 60(b) and replaces s. 269.46." Judicial Council Committee's Note to sec. 806.07, 67 Wis. 2d 587, 726 (1975). Rule 60(b) provides as follows:

"Rule 60. Relief From Judgment or Order.
"(b) MISTAKES; INADVERTENCE; EXCUSABLE NEGLECT; NEWLY DISCOVERED EVIDENCE; FRAUD, ETC. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, USC, § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."
[6] Subsection (g) was cited but not discussed in State ex rel. R.A.S. v. J.M., 114 Wis. 2d 305, 306-307, 338 N.W.2d 851 (Ct. App. 1983), and Shuput v. Lauer, 109 Wis. 2d 164, 176, 325 N.W.2d 321 (1982).
[7] In Smith the grounds set forth do not appear to fall under subsections (a) through (g). In Conrad, the grounds may have fallen under another subsection. In both cases the petition for relief was brought within the one-year period, so that the petition would have been timely under subsection (a), (b), or (c).
[8] In In Matter of Estate of Smith, 82 Wis. 2d 667, 672-73, 264 N.W.2d 239 (1978), this court characterized sec. 806.07(1) (h) as a "catch-all" provision for relief. In Conrad v. Conrad, 92 Wis. 2d 407, 418, 284 N.W.2d 674 (1979), this court cited the Smith case as support for its conclusion that sec. 806.07(1) (h) gives the court "broad discretionary authority to grant relief from a judgment." The Conrad court further concluded that sec. 806.07(1) (h) is based on Rule 60(b) (6) and that the federal cases indicate that the provision "must be liberally construed to allow relief from judgments `whenever such action is appropriate to accomplish justice.'"
[9] Relief from default judgment is allowed under Rule 60(b) (6), because of judicial preference for an adversarial determination of the merits of each controversy. See cases cited in Kane, Relief from Federal Judgments: A Morass Unrelieved by a Rule, 30 Hastings L.J. 41, 71, n. 146 (1978). Relief is frequently denied when the petitioner had earlier made a fair and deliberate choice at the time judgment was rendered or in not challenging the judgment on appeal. See cases cited in Kane, Relief from Federal Judgments, 30 Hastings L.J. 41, 57, n. 86 (1978).