IN RE the MARRIAGE OF: Renee NEHLS, Petitioner-Respondent,

v.

Mike NEHLS, Appellant.

Court of Appeals

*No. 88-2034. Submitted on briefs February 21, 1989.—Decided June 22, 1989.*

(Also reported in 444 N.W.2d 460.)

For the appellant the cause was submitted on the briefs of *Mary B. Wittwer* and *Brennan, Steil, Basting & MacDougall, S.C.,* of Janesville.

For the petitioner-respondent the cause was submitted on the brief of *Kim A. Howarth* and *Godfrey, Neshek & Worth, S.C.,* of Elkhorn.

Before Gartzke, P.J., Dykman and Eich, JJ.

DYKMAN, J. Michael Nehls appeals from an order finding him in contempt of court for failing to pay child support and denying his sec. (Rule) 806.07, Stats., motion for relief from the part of a divorce judgment finding him to be the father of Joshua Nehls. The issue is whether the trial court abused its discretion in denying Michael's sec. 806.07 motion. Because we conclude it did, we reverse.

Michael and Renee married on October 30, 1976, while Renee was pregnant with Joshua. The parties divorced in 1981. Michael was unrepresented by counsel and did not contest the divorce or Joshua's paternity. He agreed to pay $40 per week for Joshua's support.

In 1987, Renee moved the court for a contempt order requiring Michael to pay child support arrears. Michael moved the court for relief from the child support provisions of the parties' divorce judgment. The trial court denied Michael's motion. The court found Michael in contempt of court and ordered him to pay the

517

child support arrearages. Michael appeals.[1]

Michael requested relief from the divorce judgment pursuant to sec. (Rule) 806.07, Stats.

> A circuit court's order denying a motion for relief under sec. 806.07 will not be reversed on appeal unless there has been a clear abuse of discretion. An appellate court will not find an abuse of discretion if the record shows that the circuit court exercised its discretion and that there is a reasonable basis for the court's determination. The term "discretion" contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards.

*State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541–42, 363 N.W.2d 419, 422 (1985) (citations omitted).

Section (Rule) 806.07(1)(c), Stats., allows a court to relieve a party from a judgment based on fraud, misrepresentation, or other misconduct of an adverse party. Section 806.07(2) requires that a motion under sec. 806.07(1)(c) must be made within a reasonable time and not more than one year after entry of judgment. However, "even if a claim sounds in sec. 806.07(1)(a), (b), or (c), it can be granted under subsection (h), if the circuit court concludes that extraordinary circumstances exist which justify relief from a prior judgment, order or stipulation." *M.L.B.*, 122 Wis. 2d at 554, 363 N.W.2d at 428. The one-year time limit does not apply to sec. 806.07(1)(h). *Id.* at 553, 363 N.W.2d at 427.

> Since the proper test under subsection (h) for a claim that in part sounds in subsection (a), (b), or (c) but is brought outside the one-year time period is

---

[1]While the appeal was pending the parties settled the arrearages issue.

whether there are extraordinary circumstances justifying relief in the interest of justice, the task the circuit court in this case should have performed was to evaluate the facts set forth in the petition to determine whether, if true, they would constitute extraordinary circumstances justifying relief. If the circuit court concluded that they did, the circuit court then should have held a hearing to determine the truth of the allegations.

*M.L.B.,* 122 Wis. 2d at 553, 363 N.W.2d at 427.

In his affidavit in support of his motion for relief from the divorce judgment, Michael claimed that, sometime after their divorce, Renee had told him that Joshua was not his child, but that he did not believe her. He also claimed that later, a year before the present action, his sister had informed him that a friend of Renee's had told his sister that Renee claimed that Joshua was not Michael's child. This convinced him that he was not Joshua's father.

The trial court concluded that because Michael did not litigate the paternity issue at the divorce, res judicata barred him from raising the paternity issue now. We agree that res judicata applies. However, that conclusion is not determinative. The question is whether under sec. (Rule) 806.07, Stats., Michael has alleged extraordinary circumstances which, if true, would justify relief from the judgment.

This case is distinguishable from *State ex rel. R.A.S. v. J.M.,* 114 Wis. 2d 305, 338 N.W.2d 851 (Ct. App. 1983). In that case, J.M. sought relief under sec. (Rule) 806.07, Stats., from a paternity judgment entered after a contested trial and before HLA (Human Leukocyte Antigen) blood tests were possible. J.M. alleged that an HLA test would provide a "near conclusive resolution of the paternity question." *Id.* at 307, 338 N.W.2d at 851.

We affirmed the trial court's denial of his request, concluding that "[p]ublic policy and effective judicial administration require that controversies once decided on their merits remain in repose." *Id.* at 307-08, 338 N.W.2d at 852. Because paternity was never litigated or decided on the merits in the present case, *R.A.S.* is inapposite.

This case is also distinguishable from *M.L.B.* There, as part of a motion brought pursuant to sec. (Rule) 806.07, Stats., the parties to a paternity agreement presented the trial court with blood tests which positively excluded D.G.H. as the father of the child. 122 Wis. 2d at 541, 363 N.W.2d at 421. The supreme court reversed the trial court's refusal to grant relief. *Id.* at 538, 363 N.W.2d at 420.

In *M.L.B.*, the court explained the considerations of finality and justice that a court should weigh in considering sec. (Rule) 806.07, Stats., motions:

> In exercising its discretion, the circuit court should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments, including the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

122 Wis. 2d at 552-53, 363 N.W.2d at 427.

Had Michael contested paternity in 1981, the result here would be dictated by *R.A.S.* Had Michael and

Renee presented the trial court with the results of an HLA blood test excluding Michael as Joshua's father, the result here would be dictated by *M.L.B.* The facts of this case fall between the facts of *R.A.S.* and *M.L.B.* A remedy offering more relief than that given in *R.A.S.*, but less than that given in *M.L.B.* would seem appropriate.

We therefore look to *R.A.S.* and *M.L.B.* to determine what procedure should be used in situations like this. It is merely fortuitous that the parties in *M.L.B.* cooperated by taking HLA tests. It would be unfair if one party could prevent the just result reached in *M.L.B.* by an unreviewable refusal to participate in the test that permitted relief in that case. However, the adjudicated father must produce something more than curiosity or speculation to be entitled to any relief, because proceedings of this sort must not be used as fishing expeditions or for recreational litigation.

Moreover, as we noted in *R.A.S.*, it would be unfair to permit continuous relitigation of paternity matters. We conclude that where, as here, an affidavit shows that an adjudicated father did not contest paternity at trial, but he has since received information which raises a question as to his paternity, he is entitled not to an order reopening the judgment, but to discovery, including access to HLA blood tests.[2]

---

[2]HLA (Human Leukocyte Antigen) blood tests generate three statistics: the probability of exclusion, the cumulative paternity index, and the probability of paternity. *In re Paternity of M.J.B.*, 144 Wis. 2d 638, 647–48, 425 N.W.2d 404, 408 (1988). The first statistic, the probability of exclusion, could conclusively exclude Michael as Joshua's father. *Id.* at 646, 425 N.W.2d at 408. If Michael is not excluded by the first test, the other two statistics

Our society recognizes that the relationship of a father with his child is very important and carries with it significant responsibilities, including support and maintenance. However, it is inequitable to impose the responsibilities of this relationship on Michael if his former wife's silence or representations led him to erroneously believe he was Joshua's father.

It is also not fair to deprive Joshua of the knowledge of who his father is, if it is not Michael. Joshua may wish to know his real father's health history or his lineage. Joshua is also entitled to be relieved of the lingering uncertainty caused by his mother's alleged assertions of non-paternity if a blood test shows that those assertions are false.

> "One would expect that a child has a natural yearning to know his true parentage. Every child has the need to feel rooted, to find himself, and to know his true origins. When such knowledge is denied the child may resort to fantasy to fill the void. As the links to his past disappear with time, the search for his identity will become more difficult. The anxiety to learn what was in his past may be pathological, making it more difficult for the child to lead a useful life and to form meaningful relationships."

*J.H. v. M.H.*, 426 A.2d 1073, 1075 (N.J. Super. Ch. Div. 1980) (citation omitted).

Once Michael has finished his discovery, the trial court will be able to use the *M.L.B.* considerations to decide whether, in the exercise of its discretion, it should reopen the divorce judgment to permit Michael to contest the issue of Joshua's paternity.

would show what probability there is that Michael is Joshua's father. *Id.* at 647–48, 425 N.W.2d at 408.

*By the Court.*—Order reversed and cause remanded with directions.