In re the Marriage of:

Betty A. Hutjens, n/k/a Betty A. Zirbel, Joint-Petitioner-Appellant,†

v.

Robert E. Hutjens, Joint-Petitioner-Respondent.

Court of Appeals

*No. 01–3061. Submitted on briefs April 22, 2002.—Decided May 14, 2002.*

2002 WI App 162

(Also reported in 647 N.W.2d 448.)

† Petition to review denied 7-26-02.

On behalf of the joint-petitioner-appellant, the cause was submitted on the briefs of *Linda S. Isnard*

and *James C. Reiher* of *von Briesen, Purtell & Roper, S.C.* of Milwaukee.

On behalf of the joint-petitioner-respondent, the cause was submitted on the brief of *Thomas J. Walsh* of *Walsh & Walsh, S.C.*

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. Betty Zirbel appeals an order adjudicating a post-divorce dispute regarding property division. She argues that the trial court erroneously determined that the divorce judgment was unambiguous. She also contends that the trial court erroneously denied her motion to reopen and modify the judgment on the ground of extraordinary circumstances. Because the trial court properly concluded that the amended judgment was unambiguous and that Betty's motion to reopen the judgment more than sixteen years after its entry was not within a reasonable time under Wis. Stat. § 806.07(2), we affirm the order.[1]

## BACKGROUND

¶ 2. In 1984, when Betty and Robert Hutjens divorced after twenty-two years of marriage, they retained the same attorney to represent both of them. At the time, Betty was forty-one years old and employed as a clerk at a department store. Robert was forty-three and employed as a millworker at Fort Howard Paper Company. They went to an attorney together and stated that they had an agreement. Based upon the information the parties provided, their attorney drafted a marital settlement agreement that was ultimately incorporated into the divorce judgment.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 3. Betty and Robert filed a joint financial statement and stipulation. The stipulation stated that it was founded in part upon the statement of assets and liabilities set out in their financial disclosure statement and that there had been full disclosure.

¶ 4. Betty did not review any documentation concerning Robert's profit sharing account or stock owned in connection with his employment at Fort Howard. The parties stipulated that Robert was to be awarded the stock at zero value because it was "unvested until retirement." Robert was also awarded his profit sharing account valued at $55,245 and an automobile valued at $500.

¶ 5. The parties stipulated that their house was valued at $70,000. The house was not subject to a mortgage. It was awarded to Robert, minus a $55,549.50 lien in Betty's favor.[2] Betty was also awarded a vehicle, household items, investments and a checking account, the total value of which was $14,646. This division of assets resulted in an equal property division. At the divorce hearing, there was no date set for payment of the lien and no discussion regarding interest.

¶ 6. In 1985, the parties agreed to amend the divorce judgment to provide that Robert would begin to pay $250 per month toward the satisfaction of Robert's $55,549.50 obligation to her. Betty testified that she wanted the money so she could put it in savings "for my retirement that could earn interest." The amended judgment stated:

---

[2] In addition to a lien to secure Robert's obligation, Betty was named beneficiary on Robert's life insurance policy and profit sharing plan.

> Joint petitioner husband shall pay the sum of $250.00 per month to joint petitioner wife in satisfaction of her lien on the premises in the amount of $55,549.50, which premises are more particularly described as follows:
>
> . . . .
>
> It is further agreed that said payment shall stop and such lien shall be satisfied in full upon the earliest of the following: Full payment of said lien or the death of Betty A. Hutjens. If said lien is extinguished by reason of the death of Betty A. Hutjens, said lien shall be satisfied in full.
>
> Said payments shall be made on the first day of each and every month commencing August 1, 1985, and said payments shall be made to Firstar Bank De Pere, 441 Main Avenue, De Pere WI 54115.

¶ 7. Again, no mention was made as to a date certain for the sale of the home or accrual of interest on the lien. Over the next sixteen years, Betty accepted the $250 monthly payments and did not request interest.

¶ 8. Robert made the payments as stipulated until May 2001, when he sold the house for $137,900. Because the parties disputed the balance to be paid Betty in satisfaction of her lien, Robert filed a motion requesting an order concerning the disbursement of the sale proceeds. Betty also filed a motion, asking that the judgment be clarified and reopened under Wis. Stat. § 806.07. Betty claimed that when Robert filed his financial disclosure statement in 2001, Betty first learned that the correct value of his profit sharing account at the time of the divorce was $82,940, rather than the $55,245 listed. The difference reflected employee contributions that were inadvertently undisclosed at the time of the divorce. Betty also claimed for the first time that the ninety-one shares of Fort Howard Paper Company stock, which Robert understood to be unvested and valueless in 1984, were actually vested

260

and transferable in 1984. Their value would have been approximately $4,823 in 1984.

¶ 9. At the 2001 hearing, Betty claimed that the amended judgment should be modified to reflect interest on her lien and to include the correct values of the profit sharing account and stock. Betty had never previously requested documentation to verify the values of the pension plan or the stock but relied instead on the values stated in the parties' joint financial disclosure statement. Betty testified that at the time of the divorce, she did not ask to be awarded interest and there was no discussion of any interest payment.

¶ 10. Following the hearing, the trial court made detailed findings. The court found that the inaccurate values of the profit sharing account and the stock listed in the financial disclosures were the result of mistake, not fraud or misrepresentation. The court found that accurate information would have been available in 1984, but that Betty chose not to investigate it. The court concluded that the reason Betty did not find out the correct values of the stock and profit sharing account until 2001 was because she did not ask, concluding: "That information was available to [Betty] in 1984, both for the stock and for the retirement plan. . . . And she chose not to look at it."

¶ 11. The court found that the parties had reached an agreement and retained an attorney merely to reduce their agreement to writing. It determined that "they understood what that deal was and they wanted somebody to put it on paper, so that they could get on with their lives." In addition, the court found that Betty went to the attorney in 1985 because she wanted payment "so that she could start earning interest. . . . [T]hat tells me that she had an understanding that she wasn't entitled to interest up to that point."

261

¶ 12. The court also concluded that Betty's allegation of inadequate representation at the divorce was not compelling because the parties received the legal assistance that they had sought.[3] The trial court determined that Betty's stipulation for the amended judgment to pay $250 per month was the result of a deliberate choice. The court stated that if the original judgment had been ambiguous, the parties could have clarified it when they amended the judgment. The court concluded that the amended judgment was not ambiguous merely because it failed to provide interest. The court also denied Betty's motion to reopen under WIS. STAT. § 806.07.

## DISCUSSION

1. Claim of ambiguity

¶ 13. Betty claims that the trial court erroneously determined that the amended judgment was unambiguous. Citing *Washington v. Washington*, 2000 WI 47, ¶ 26, 234 Wis. 2d 689, 611 N.W.2d 261, Betty argues that WIS. STAT. § 767.32 does not preclude the court from construing ambiguous judgments. She contends that because the amended judgment was silent about interest, it must be clarified.

·¶ 14. We agree that WIS. STAT. § 767.32 does not preclude a court from clarifying an ambiguous judgment.[4] Nonetheless, we are unpersuaded that under the

---

[3] Consistent with the trial court's observations, we agree that this case is a good example why one lawyer should not represent two parties in a divorce.

[4] WISCONSIN STAT. § 767.32(1), **"Revision of certain judgments"** provides in part: "[N]or shall the provisions of a judgment or order with respect to final division of property be subject to revision or modification."

*Washington* case, any judgment that does not provide interest is ambiguous. Divorce judgments are to be construed as of the time of entry and in the same manner as other written instruments. *Id.* at ¶ 17. "Ambiguity exists when the language of the written · instrument is subject to two or more meanings, either on its face or as applied to the extrinsic facts to which it refers." *Id.* at ¶ 18. A divorce judgment that is clear on its face is not open to construction. *Id.* at ¶ 17.

¶ 15. Determining whether an ambiguity exists is a question of law. *Id.* at ¶ 18. We decide questions of law independently of the circuit court, benefiting from its analysis. *Id.* at ¶ 4.

¶ 16. In *Washington*, the court was faced with the division of the husband's U.S. Civil Service Retirement System pension. *Id.* at ¶ 6. A 1995 divorce judgment awarded each party one-half of the total property. *Id.* To achieve this end, the court ordered that the $50,273 pension should be divided as follows: $23,910 to Mrs. Washington and $26,363 to Mr. Washington. *Id.* Neither party would be entitled to receive their share of the pension until Mr. Washington's retirement, approximately twenty-one years after the date of divorce. *Id.* at ¶ 7. It was undisputed that appreciation and interest would automatically accumulate on both spouses' shares of the pension.

¶ 17. In 1997, the federal Office of Personnel Management notified Mr. Washington that in order to effectuate the division of pension benefits, supplemental documents were required. *Id.* at ¶ 8. As a result, Mr. Washington filed a motion in circuit court requesting that the judgment be amended to reflect the suggested language. *Id.* at ¶ 9. At that time, the parties noted that the judgment was silent with respect to the allocation of

appreciation and interest that would accumulate on both spouses' shares of the pension. *Id.*

¶ 18. The trial court awarded Mr. Washington alone any and all appreciation and interest that would accumulate on both spouses' shares of the pension. *Id.* at ¶ 12. The court of appeals affirmed on the basis that WIS. STAT. § 767.32(1)(a) barred the modification or revision of a property division. *Id.* at ¶ 2.

¶ 19. Our Wisconsin Supreme Court reversed, holding that the divorce judgment was ambiguous and clarification of an ambiguity does not violate WIS. STAT. § 767.32(1)(a). *Id.* at ¶ 4. The court ruled that as applied to the facts, the 1995 divorce judgment could have been interpreted three different ways: (1) the appreciation and interest would be pro-rated and allocated to each spouse on the basis of the lump-sum share awarded in the divorce judgment; (2) all the appreciation and interest should be awarded to the husband; or (3) all the appreciation and interest should be awarded to the wife. *Id.* at ¶ 27.

¶ 20. The court observed:

> [V]aluing and dividing pension benefits is one of the most difficult matters a circuit court faces in the final division of property in a divorce judgment. As one commentator put it: "The complexity of classifying, valuing and dividing these plans is unmatched by any other issue in any area of modern law."

*Id.* at ¶¶ 30–31 (citations omitted).

¶ 21. Our supreme court concluded that in light of the "limited language about the pension in this judgment, the complexity of dividing pensions, and the understanding that more work would be needed in this case to divide the pension," it would have been unreasonable to read WIS. STAT. § 767.32(1)(a) to prohibit the

circuit court from construing the final division of the pension in order to allocate appreciation and interest on the pension. *Id.* It remanded to the circuit court to determine the allocation of appreciation and interest under the final property division in the divorce judgment. *Id.* at ¶ 35.

¶ 22. We are not persuaded that *Washington* supports Betty's assertion that the amended judgment is ambiguous. Monthly payments of $250 in satisfaction of Betty's lien cannot be said to present the same degree of complexity as a federal pension plan because "The complexity of classifying, valuing and dividing these plans is unmatched by any other issue in any area of modern law." *Id.* at ¶ 31 (quoting Brett R. Turner, *Equitable Distribution of Property* 288 (2d ed. 1994)). Importantly, to be distinguished from a federal civil service pension, Robert's obligation to Betty would not earn interest independent of a court award. As a result, there was no accumulated interest to be allocated and thus no corresponding ambiguity. Further, unlike a federal pension, where "[s]upple-mental documents were needed to effectuate the court's division," no additional document was needed to effectuate the amended judgment. *Id.* at ¶ 8. The parties did not return to court until sixteen years after the amended judgment was entered, all while Betty was receiving $250 monthly payments.

¶ 23. In contrast to *Washington*, the amended judgment here reveals just one interpretation, that payment was to be $250 per month with no interest provided. A divorce judgment "that is clear on its face is not open to construction." *Id.* at ¶ 17. Unless we find that "the language of the written instrument is subject to two or more meanings, either on its face or as applied

265

to the extrinsic facts to which it refers" the document is unambiguous. *Id.* at ¶ 18. Because the amended judgment fails to disclose more than one reasonable interpretation, it is not open to construction.

¶ 24. Betty argues that under *Corliss v. Corliss*, 107 Wis. 2d 338, 347, 320 N.W.2d 219 (Ct. App. 1982), the trial court, in its discretion, may refuse to award interest, but failure to explain its decision is error. *Corliss* does not, however, involve the interpretation of an ambiguous judgment. *Corliss* was a direct appeal from a divorce judgment. *See id.* Because the trial court in *Corliss* did not articulate a rationale for not providing interest, our supreme court ordered the matter remanded for the trial court to award interest or state why it did not. *Id.* Here, Betty did not appeal the stipulated divorce judgment. Accordingly, the trial court's discretionary exercise of dividing property is not before us.

¶ 25. Paragraph deleted.

2. Motion to reopen under WIS. STAT. 806.07

¶ 26. Next, Betty argues that the trial court erroneously denied her motion to reopen and modify the amended divorce judgment under WIS. STAT. § 806.07(1)(h), and award her one-half the 1986 value of the employee contributions of Robert's profit sharing account and stock. Betty relies on subsection 1(h), under which relief may be had if "extraordinary circumstances" exist and the motion is made within a reasonable time. *See* WIS. STAT. § 806.07(1)(h) and (2).[5]

■■■■■■

¶ 27. A party has the right to seek to reopen a divorce judgment dealing with the property division

---

[5] WISCONSIN STAT. § 806.07, **"Relief from judgment or order,"** provides in part:

even though the judgment was based on a stipulation. *Conrad v. Conrad*, 92 Wis. 2d 407, 413, 284 N.W.2d 674 (1979). A trial court's order denying relief from a judgment under WIS. STAT. § 806.07 will not be reversed on appeal unless it erroneously exercised its discretion. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 541, 363 N.W.2d 419 (1985). We will not find an erroneous exercise of discretion if the record shows that the trial court exercised its discretion and that there is a reasonable basis for the court's determination. *Id.* at 542.

■

¶ 28. The timeliness of motions under WIS. STAT. § 806.07(1)(h) is "not subject to . . . bright-line rules." *State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 632, 511 N.W.2d 868 (1994). "[P]rior decisions have not attempted to define precisely how 'reasonableness' should be determined in the context of § 806.07(1)(h), Stats. To a large extent, of course, the term defies precise definition." *Id.* at 626.

---

(1) On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:

. . . .

(h) Any other reasons justifying relief from the operation of the judgment.

(2) The motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1)(b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court.

> In some instances, such factors will include those "extraordinary circumstances" which justify relief on substantive grounds. This is not to say that all the "extraordinary circumstances" in a case will factor into the "reasonable time" inquiry, nor does it mean that a motion will be timely whenever "extraordinary circumstances" exist. The point is that the two analyses, while separate, cannot be completely divorced.

*Id.* at 628. These factors include whether the judgment was the result of a conscientious, deliberate and well-informed choice, the adequacy of counsel's representation, whether there has been a decision on the merits, whether there is a meritorious defense and whether intervening circumstances make it inequitable to grant relief. *M.L.B.*, 122 Wis. 2d at 552–53.

¶ 29. The record reflects that the trial court understood and properly applied the correct analysis. Although Betty claimed not to have learned of the inaccuracies in the financial disclosure statement until 2001, the court found that this was because Betty did not ask. The court determined that Robert had an interest in relying on the finality of the judgment. "We are mindful—and the circuit courts should be mindful—that finality is important and that subsection (h) [of WIS. STAT. § 806.07] should be used sparingly." *Id.* at 550. The court concluded that given the lack of action on Betty's part for more than sixteen years, the interest of finality of judgments outweighed the interest of reopening the amended judgment to have a trial on the merits. Because the court articulated a rational basis grounded on a correct application of the law to facts of record, we do not disturb the court's determination.

## CONCLUSION

¶ 30. We conclude that mere silence regarding interest does not render the amended judgment ambiguous. Here, Betty did not question the amended judgment until more than sixteen years after its entry. The record reflects a rational basis for the trial court's decision that Betty did not move to reopen within a reasonable time under WIS. STAT. § 806.07. Consequently, its decision is sustained on appeal.

*By the Court.*—Order affirmed.