RHODES, and wife, Plaintiffs-Respondents, v. TERRY, Defendant-Appellant.

Supreme Court

*No. 76–661. Submitted on briefs May 31, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 248.)

For the appellant the cause was submitted on the briefs of *Wilson, Broadnax & Owens* of Milwaukee.

For the respondents the cause was submitted on the brief of *John A. Udovc* of Milwaukee.

COFFEY, J.   This is an appeal from an order denying the defendant-appellant's motion to vacate a default judgment and for permission to answer and defend the plaintiffs-respondents' complaint on it merits.   The plaintiffs-respondents in this case are husband and wife. At the time of the incident, Allen Rhodes, age 24, was a student draftsman attending the Milwaukee Area Technical College and employed by the Allis-Chalmers Corp. as an apprentice welder.   Mr. Rhodes was under the medical care and treatment of the defendant-appellant, Dr. John W. Terry, a physician-surgeon.

The plaintiff's complaint alleges the following:   On October 2, 1974 the defendant, Dr. Terry, treated the plaintiff, Allen Rhodes, for an abscess or cyst in his right armpit (axilla).   The defendant performed an operation on Allen Rhodes to drain the abscess.   As a result of the surgical probing in the operation, the plaintiff's right axillary artery was damaged and weakened, causing an aneurysm to form in the artery.   On October 18, 1974 the

defendant again treated the plaintiff, Allen Rhodes, and diagnosed the aneurysm as a recurrence of the abscess and once more proceeded to drain it surgically. The second operation resulted in the piercing and hemorrhaging of the axillary artery. Another surgeon, Dr. Ghosh, was called in consultation to stop the hemorrhaging and a third doctor, a plastic surgeon, was thereafter summoned to repair the artery with a saphenous graft.

The plaintiffs, by their attorney, commenced this action with the service of a summons on the defendant on November 25, 1975 and filed with the court on February 18, 1976. At that time in 1975, prior to the enactment of the new Rules of Civil Procedure (effective January 1, 1976) an action was commenced by service of a summons on the defendant, pursuant to sec. 262.02, Stats. 1973.

The summons served on Dr. Terry stated that the defendant was summoned and required to serve upon John A. Udovc, plaintiffs' attorney, a demand for a copy of the complaint within twenty (20) days after service of the summons. The summons also recited that the defendant's failure to demand a copy of the complaint from the attorney would result in a judgment being rendered against him according to the demand in the complaint.

The complaint filed on February 18, 1976 alleged that the defendant doctor was negligent and had failed to exercise the customary degree of skill and care employed by doctors in the community and specifically set forth the following acts of negligence:

(a) He failed to properly diagnose the degree of cyst involvement;

(b) He gave plaintiff improper advice which he relied on until it was too late to prevent permanent loss of structure and function of his right axilla, brachial plexus, and adjacent blood vessels and muscles;

(c) He failed to treat plaintiff for the axillary aneurysm which resulted from the first operation;

(d) He failed to follow up plaintiff's case to make sure he was being properly treated;

(e) He neglected removing the hematoma for so long that permanent damage was done to the muscle and fascia and vascular and nerve supply of the right shoulder, chest, and arm;

(f) He abandoned treatment of plaintiff, so that although plaintiff underwent two (2) additional operations by other surgeons, he has been left with arm impairment.

The co-plaintiff, Raye Rhodes, alleged that defendant's negligence was the proximate cause of her loss of society, companionship and service of her husband.

On June 14, 1976, after more than twenty (20) days had elapsed since the date of service of the summons and the defendant having failed to answer or respond, the plaintiffs moved the court for entry of a default judgment. The trial court entered default judgment in favor of the plaintiffs on June 15, 1976. The notice of entry of judgment, together with a copy of the plaintiffs' complaint, was served on the defendant on June 22, 1976.

On January 11, 1977, over six months later, the defendant's attorney filed a motion to vacate the default judgment, pursuant to sec. 806.07, Wis. Stats., together with an affidavit supporting the motion. The defendant's motion was based on the grounds of ". . . mistake, inadvertence, surprise, and excusable neglect . . ." The plaintiffs filed an affidavit in opposition to defendant's motion.

A hearing was held on the defendant's motion to vacate the judgment on February 21, 1977. The trial judge, in an order from the bench denying the defendant's motion to vacate the default judgment, stated that the defendant had not demonstrated good cause for vacating the judgment. The court noted the following factors in support of its ruling: (1) Dr. Terry's ability to read the plain wording of the summons and his failure to respond ac-

cordingly; (2) the efforts made by plaintiff's counsel to contact the doctor by numerous phone calls and letters prior to entry of the default judgment; (3) the failure of the defendant to bring the motion until some thirteen (13) months after the service of the original summons; more specifically, a period of seven (7) months from the date he originally received notice of the action by summons and then an additional period of more than six (6) months after the entry of default judgment; (4) the defendant's knowledge of the court system gained through the experience of numerous other lawsuits filed against him. The court, in a written order dated May 9, 1977, dismissed the defendant's motion to vacate the default judgment and the defendant now appeals from the order.

Issue:

Did the trial court abuse its discretion in ruling under the facts and circumstances of this case that a delay of six months in filing a motion to vacate a default judgment exceeded the statutory intent of the "reasonable time" requirement although filed within the maximum one-year time limit for filing a motion, pursuant to sec. 806.07 (1) (a), Stats.?

The defendant seeks to vacate the earlier default judgment entered against him and permission to answer and defend the plaintiffs' complaint on the merits. The defendant relies on sec. 806.07 (1) (a), Wis. Stats., which reads as follows:

"(1) On Motion and upon such terms as are just, the court may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
"Mistake, inadvertence, surprise, or excusable neglect; . . ."

However, in seeking to vacate a default judgment pursuant to sec. 806.07 (1) (a), Stats., the new statute requires it be brought within a "reasonable time" and

specifically no later than one year after entry of judgment. The time limits for filing a motion to vacate are prescribed in sub. (2) of sec. 806.07 which reads:

"(2) The motion shall be made within a reasonable time, and, if based on sub. (1) (a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. A motion based on sub. (1) (b) shall be made within the time provided in s. 805.16. A motion under this section does not affect the finality of a judgment or suspend its operation. This section does not limit the power of a court to entertain an independent action to relieve a party from judgment, order, or proceeding, or to set aside a judgment for fraud on the court."

Thus, the one year period constitutes the maximum time allowed or a "statute of limitations" period for bringing the motion to vacate on the grounds of mistake, surprise, inadvertence or excusable neglect. Callaghan's *Wisconsin Pleading and Practice,* sec. 40.15, p. 19. However, the mere fact that the motion is brought within one year after entry of judgment does not mean that the motion is timely. Callaghan's *Wisconsin Pleading and Practice,* sec. 40.17, p. 20 recites the following in this regard:

". . . Although the statute allows a year after entry of the judgment to make a motion in such a case, delay of even less than that time might still preclude the granting of relief, if there are circumstances of 'acquiescence, or of special injury to the plaintiff since the rule also requires that the motion be made within a reasonable time.' " *See also:* Graczyk, "The New Wisconsin Rules of Civil Procedure" Chapters 805–07, 59 Marq. L. Rev. 727 (1976).

The enactment of sec. 806.07 providing that a motion to vacate must be filed within a "reasonable time" is a significant amendment to its statutory predecessor, sec.

269.46, Stats. 1973. The former statute did not contain the "reasonable time" requirement and permitted the filing of the motion any time within one year after entry of the judgment.[1] Because sec. 806.07 and the reasonable time element is a recent development— (effective January 1, 1976, Supreme Court Order, 67 Wis.2d 726), this is the first Wisconsin case that will consider the question of what constitutes "reasonable time" under sec. 806.07 (2), Stats.

It is important to note the procedural ramifications imposed by the new amendment setting forth a "reasonable time" requirement. The primary issue to be addressed by the court is whether the motion has been timely filed "within a reasonable time." On the other hand, if the motion is based upon subsection (1) (a) and (c) of sec. 806.07,[2] the added requirement must also be complied

---

[1] Therefore, appellant's citation of cases decided pursuant to sec. 269.46, Stats. 1973, highlighting the substantial period of time up to one year, between the entry of judgment and the filing of a motion to vacate is unpersuasive. The time limits in these cases have little or no bearing on our consideration of whether the defendant-appellant's motion to vacate was filed within a "reasonable time" pursuant to the new statute, sec. 806.07(2).

[2] Sec. 806.07(1) (a–h) recite the following grounds for bringing a motion to vacate a judgment order or stipulation:

"(a) Mistake, inadvertence, surprise, or excusable neglect;

"(b) Newly-discovered evidence which entitled a party to a new trial under s. 805.15(3);

"(c) Fraud, misrepresentation, or other misconduct of an adverse party;

"(d) The judgment is void;

"(e) The judgment has been satisfied, released or discharged;

"(f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

"(g) It is no longer equitable that the judgment should have prospective application; or

"(h) Any other reasons justifying relief from the operation of the judgment."

with that the motion be filed within one year from entry of the judgment. If the court has concluded the motion was timely filed, then *Wagner v. Springaire Corp.,* 50 Wis.2d 212, 220, 184 N.W.2d 88 (1971) sets forth the two essential elements to be considered in deciding a motion to vacate a judgment. First, do the moving papers demonstrate good cause to establish the validity of the grounds for the motion? Second, do the proposed pleadings contain facts and information to establish a meritorious defense?

In this case, the defendant brought his motion more than 13 months after the service of the original summons: 7 months from the date he first received notice of the action and an additional period in excess of 6 months after the entry of the default judgment. However, the motion to vacate was filed within the one-year statutory maximum time limitation after the entry of judgment. Nevertheless, the intent of the new statute adopting the "reasonable time" requirement was to shorten the time period for filing a motion to vacate rather than allowing these motions to be filed up to a year after entry of the judgment as permitted by the former statute, sec. 266.46, 1973. It is necessary to restrict the time for filing a motion to vacate in order to insure the orderly disposition of cases and encourage the finality of judgments, thus improving the administration of justice. Thus, the question to be answered is not whether the motion was brought within the one-year time period, but whether the motion was made within a "reasonable time" pursuant to sec. 806.07, Stats.

Sec. 40.17 of Callaghan's, *Wisconsin Pleading and Practice,* quoted above, indicates that the court should consider the particular facts and circumstances of the case in deciding whether the motion was brought within a reasonable time. The following considerations and circumstances support the trial judge's reasoning for

the refusal to vacate the default judgment as not being brought within a reasonable time:

1. The defendant had seven months within which to respond to plaintiffs' summons, or to make an appearance in the initial action, before the plaintiffs moved for a default judgment. The defendant ignored the summons. After the default judgment had been entered, and the defendant received notice of entry of judgment, he again waited more than six months before bringing his motion to vacate the judgment. The trial court judge noted and commented on the defendant's slowness in acting. The defendant's actions were neither prompt nor timely, but rather indicative on delay and the lack of respect for a court summons.

2. The trial court also noted that the defendant was an intelligent person, a medical doctor, highly educated and, therefore, able to read and understand the importance and nature of the summons served upon him. The fact that defendant was an intelligent person makes his refusal to act promptly even more unreasonable and inexcusable.

3. Further, the defendant was not unfamiliar with the legal system and the legal procedures. There was evidence that the defendant had been a "defendant-witness" in several prior lawsuits. In fact, there was evidence indicating that the defendant was involved in another lawsuit at approximately the same time that the summons in this case was served on him. The defendant retained his present counsel to represent him in the other lawsuit but failed to make use of the attorney in this case until several months after the default judgment had been entered. In light of his familiarity with the legal system, the defendant most certainly understood the importance of promptly responding to plaintiffs' summons or at least instructing his attorney to discuss the matter with the plaintiffs' attorney.

4. Additionally, there is evidence that the plaintiffs would be prejudiced if defendant's motion to vacate the default judgment was granted. In his proposed answer submitted together with his motion to vacate the defendant refers to the fact that he had professional liability insurance with Aetna Casualty and Surety Company which was in effect at the time of plaintiff's injuries. However, the defendant's liability insurance carrier had previously indicated its refusal to pay the judgment because of the defendant's failure to inform them of the claim within the time limitation stated in the policy for filing claims. The insurance carrier has set up the defendant's failure to timely file a claim as a policy defense and thus disclaims any liability.

The defendant contends that principles of fairness dictate that the judgment should be vacated so that he can interplead his malpractice carrier in order to provide insurance coverage for any personal liability resulting from this action. However, as indicated above, the insurer apparently has a strong coverage defense and thus there is no guarantee that the defendant, or the plaintiff, would be placed in a better position by bringing the insurer into the action.

5. In addition to the service of the summons, the plaintiffs' attorney indicated that he wrote three letters and made several telephone calls to the defendant seeking to schedule a conference to discuss the claim and ascertain the identity of the defendant's liability carrier. In each instance after telephone calls to the defendant's office, the plaintiffs' attorney left his name, telephone number and a message for a return call. The plaintiffs' attorney never received any mail or telephone replies to any of his communications.

It is apparent that plaintiffs' attorney's attempts to contact Dr. Terry should have put the defendant on notice of the importance of at least taking some action towards

investigating the nature of the inquires made by plaintiffs' counsel. The failure to respond until more than six months had elapsed after the entry of judgment was unreasonable in light of the circumstances and in defiance of the intent of the amended statute.

6. Finally, the defendant cites his wife's illness and subsequent death as having a profound, disturbing effect on him and being the cause of his failure to timely answer the plaintiffs' summons and his failure to bring a motion to vacate the judgment promptly. However, the evidence shows that defendant's wife had been ill for one year prior to the service of the summons in this case and she did not die until several months after the time set for defendant to answer had expired.

While the court sympathizes with the defendant's problems, they were not so substantial or debilitating to prevent him from responding to the plaintiffs' many attempted communications by phone and letter or hiring an attorney to act on his behalf.

It should be noted that this court's authority to reverse the decision of a trial court on a motion to vacate is limited to the question of whether there has been an abuse of discretion:

"The determination of whether to vacate a default judgment is within the sound discretion of the trial court, and the trial court's decision will not be disturbed unless there has been a clear abuse of discretion. *Buchen v. Wisconsin Tobacco Co.,* 59 Wis.2d 461, 465, 208 N.W.2d 373; *Wagner v. Springaire Corp., supra." Dugenske v. Dugenske,* 80 Wis.2d 64, 68, 257 N.W.2d 865 (1977) ; and

". . . This court will not find an abuse of discretion if the record shows that discretion was in fact exercised and if the record shows that there is reasonable basis for the trial court's determination." *Howard v. Duersten,* 81 Wis.2d 301, 260 N.W.2d 274 (1977).

In *Hollingsworth v. American Finance Corp.,* 86 Wis. 2d 172, 177, 271 N.W.2d 872 (1978) the court also noted

that a trial court's exercise of discretion on matters relating to a motion to vacate a judgment should be governed by the following considerations:

"In *Dugenske v. Dugenske,* 80 Wis.2d 64, 68, 257 N.W. 2d 865 (1977), the court set forth three principles guiding the exercise of the trial court's discretion: (1) The statute relating to vacating default judgments is remedial and should be liberally construed; (2) the law favors affording litigants their day in court; and (3) default judgments are particularly disfavored. The court also noted countervailing factors of public policy which favor finality of judgments and discourage litigation delay and negligence of counsel. *Id.* at 70."

The facts and circumstances in the instant case dealing with the defendant's untimely filing of a motion to vacate until more than six months after entry of the judgment supports the trial court's finding that the defendant failed to answer within a "reasonable time." The trial court further found that the defendant had not met the standards required for granting a motion to vacate on the grounds of mistake, surprise, inadvertence or excusable neglect. We hold that the trial court's finding that the defendant's motion was not filed within a "reasonable time" as contemplated by the statute for bringing such motions was not a clear abuse of discretion. Further, the facts in this case demonstrate that the reopening of the judgment would be contrary to public policy as it would give the court's approval to encouraging untimely delay, the protraction of litigation, and disrespect for the court process; these factors are a result of the defendant's complete disregard for the legal system as exemplified by his failure to respond to the clear wording of the summons.

*By the Court.*—Order affirmed.