STATE of Wisconsin EX REL. CYNTHIA M.S., Plaintiff-Respondent-Petitioner,

v.

MICHAEL F.C., Defendant-Appellant.

Supreme Court

*No. 91–2769. Oral argument November 29, 1993.—Decided February 23, 1994.*

(Also reported in 511 N.W.2d 868.)

For the plaintiff-respondent-petitioner there were briefs by *Chris A. Messerly, Anne E. Workman* and *Robins, Kaplan, Miller & Ciresi,* St. Paul, MN and oral argument by *Chris A. Messerly.*

For the defendant-appellant there was a brief by *James G. Curtis* and *Hale, Skemp, Hanson & Skemp,* LaCrosse and oral argument by *James G. Curtis.*

Guardian ad litem brief was filed by *Ramona A. Gonzalez* and *Bosshard & Associates,* LaCrosse.

WILCOX, J. This is a review under sec. (Rule) 809.62, Stats., of an unpublished decision of the court of appeals which reversed La Crosse County Circuit Court Judge Peter G. Pappas' order vacating the 1979 dismissal of petitioner's paternity action against the respondent. The court of appeals held that petitioner's motion to vacate the 1979 order of dismissal was not brought within a reasonable time as required by sec. 806.07(2), Stats.[1] We believe that under the facts of this case, petitioner did bring her motion to vacate within a reasonable time. Accordingly, the decision of the court of appeals is reversed.

The petitioner, Cynthia M.S., gave birth to Nathanael S. on January 10, 1978. In February of 1979, a paternity action was commenced in La Crosse County against the respondent, Michael F.C. At a preliminary hearing, Cynthia testified that Michael was the only man with whom she had had sexual relations during the statutory period of conception. The court found probable cause to believe that Michael was Nathanael's father, and ordered that blood tests be performed. The results of those tests excluded Michael as the father.

When the assistant district attorney handling the case told Cynthia of the results, he informed her that

---

[1] Petitioner brought her motion under sec. 806.07(1)(h), Stats. Section 806.07(2) requires that such motions be made "within a reasonable time. . . ."

such tests were 98 percent accurate and were considered conclusive evidence of parentage.[2] He also advised her that she could have the tests performed again, but only at her own personal expense of between $600 to $800. Due to her limited financial resources, Cynthia did not have additional tests performed at that time. As a result, the assistant district attorney moved for dismissal of the paternity action. That motion was granted by order dated September 27, 1979.

At the time of Nathanael's birth, Cynthia was 23 years old and employed as a sales clerk in a La Crosse jewelry store. She was a high school graduate and had completed training as a medical assistant at the Western Wisconsin Technical Institute. This training was office/clerical in nature and had not given her any familiarity with blood testing. Similarly, Cynthia had not had any prior experience with the legal process.

In August of 1979, Cynthia moved to Minneapolis and got a job with the Hennepin County Medical Center. Her employment there continued over the ensuing 10 years, during which her annual income rose from approximately $7,000 in 1980 to $17,000 in 1989. Throughout this same period Cynthia remained solely responsible for all of her and Nathanael's expenses. These included food, clothing, rent, health insurance and day care.

Despite the outcome of the original tests, Cynthia continued to believe that Michael was Nathanael's father. In 1980 she contacted Dr. Herbert Polesky, an expert in paternity blood testing, raising with him the possibility that an error had been made. Dr. Polesky

---

[2] Section 52.36(3), Stats. read at the time:

Whenever the results of said tests exclude the defendant as the father of the child the same shall be conclusive evidence of such fact and the court shall dismiss said action. . . .

replied that such tests were exceedingly accurate and that she would have trouble convincing anyone that Michael was the father given the results. Cynthia testified that she was very intimidated by Dr. Polesky's response.

In 1987 the issue again arose when a physician acquaintance of Cynthia's inquired as to how she planned to finance Nathanael's college education. This acquaintance arranged, at no expense to Cynthia, to have the tests performed again, this time by Dr. Polesky. The new results indicated a 99.16 percent probability that Michael was in fact Nathanael's father.

Armed with this newly-acquired evidence, Cynthia tried to initiate paternity proceedings against Michael in California, the state in which he has resided since 1983. The California county attorney's office informed her, however, that it would not pursue the case until such time as the 1979 order of dismissal was vacated.

Cynthia's first response was to move the La Crosse County Circuit Court to enter an order declaring that the 1979 dismissal had not been on the merits. Such a determination would, presumably, satisfy the requirements of the California courts. The trial court denied that motion, holding that its 1979 dismissal was on the merits because it was based on then thought-to-be-accurate blood tests.

Subsequently, on April 2, 1990, Cynthia moved the trial court to vacate the 1979 order of dismissal pursuant to sec. 806.07(1)(h), Stats.[3] An evidentiary hearing on that motion was held on January 3, 1991.

On October 7, 1991, the trial court rendered its decision. Noting that its conclusions were premised on

---

[3] *See,* pages 624-625, *infra,* for text of sec. 806.07, Stats.

"all pleadings, testimony of witnesses and arguments by counsel," and after devoting six pages to its factual findings, the court determined that Cynthia's motion had been made within a reasonable time, "both from the time of the 1979 Order and from the time of Dr. Polesky's December 1987 HLA test results."

The court then went on to conclude that "extraordinary circumstances" justified the granting of Cynthia's motion. It characterized Cynthia as "unsophisticated," lacking the financial resources to afford additional blood tests. It also considered Nathanael's "substantial interests" in the matter, and found that they outweighed the prejudice "if any" to Michael. The court noted that Michael chose not to present any evidence of prejudice at the evidentiary hearing, that there was no indication that any man other than Michael was the father, and that blood tests now indicated a 99.16% probability that he was Nathanael's father. It also noted that Michael had not been prejudiced by a change in technology since the HLA testing performed by Dr. Polesky was the same type of testing performed in 1979.

The court of appeals reversed. It began by determining that the trial court failed to adequately explain the reasoning behind its decision. As a result, it conducted its own review of the record, one which led it to conclude that the facts did not support a finding that Cynthia brought her motion within a reasonable time. Therefore, it concluded, the trial court's holding to the contrary constituted an erroneous exercise of discretion.[4]

---

[4] Michael has not appealed that portion of the trial court's decision which found that, timeliness of Cynthia's motion aside, "extraordinary circumstances" exist which justify relief under sec. 806.07(1)(h). Michael's sole argument, both here and at the

The court of appeals focussed its inquiry on two factors: the basis for Cynthia's delay, and the prejudice to Michael if relief were granted. With respect to the latter, the court agreed that in most respects, any prejudice to Michael in this case was of "minimal concern." As for Cynthia, however, the court found that her financial condition could not in and of itself justify her 10 year delay in bringing the motion. This was particularly true, the court believed, given that during that period Cynthia apparently never sought help from any governmental or social services agency.

The question we must decide is whether the trial court properly granted Cynthia's motion for relief from the 1979 order of dismissal. An appellate court's review of a trial court's decision on a motion to vacate is limited to the question of whether there has been an erroneous exercise of discretion. *Rhodes v. Terry,* 91 Wis. 2d 165, 176, 280 N.W.2d 248 (1979). Erroneous exercise of discretion will not be found if the record shows that the trial court exercised its discretion and that there is a reasonable basis for the court's determination. The term "discretion" contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record and yields a conclusion based on logic and founded on proper legal standards. *State ex rel. M.L.B. v. D.G.H.,* 122 Wis. 2d 536, 542, 363 N.W.2d 419 (1985).

Section 806.07, Stats., entitled **Relief from judgment or order** provides the following:

> On motion and upon such terms as are just, the court may relieve a party or legal representative

court of appeals, is that Cynthia failed to bring her motion within a "reasonable time" as required by sec. 806.07(2).

from a judgment, order, or stipulation for the following reasons:

 (a) Mistake, inadvertence, surprise, or excusable neglect;

 (b) Newly-discovered evidence which entitles a party to a new trial under s. 805.15(3);

 (c) Fraud, misrepresentation, or other misconduct of an adverse party;

 (d) The judgment is void;

 (e) The judgment has been satisfied, released or discharged;

 (f) A prior judgment upon which the judgment is based has been reversed or otherwise vacated;

 (g) It is no longer equitable that the judgment should have prospective application; or

 (h) Any other reasons justifying relief from the operation of the judgment.

 (2) The motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made. . . .

In *M.L.B.*, 122 Wis. 2d at 544–45, this court observed the following with respect to motions under subsection 806.07(1)(h):

Subsection (h) is written in broad terms and obviously extends the grounds for relief beyond those provided for in the preceding sections: under subsection (h) the ground for granting relief is "justice" and the time for bringing the motion is "reasonable."

As indicated, such motions must satisfy both substantive and time criteria. With respect to the substantive inquiry, this court has adopted an "extraordinary circumstances" test. *Id.* at 549. Under

that test, a court must determine whether, in view of all the facts, "extraordinary circumstances" exist which justify relief in the interests of justice. *Id.* at 552–53. Here, the trial court determined that "extraordinary circumstances" warranting relief existed, and Michael has not appealed that holding.

The sole issue before us, therefore, is whether Cynthia brought her motion within a reasonable time. Our prior decisions have not attempted to define precisely how "reasonableness" should be determined in the context of sec. 806.07(1)(h), Stats. To a large extent, of course, the term defies precise definition.

While the "reasonable time" constraint of sec. 806.07(2), Stats. was not specifically at issue in *M.L.B.*, that decision is nonetheless relevant to this discussion. In *M.L.B.*, a putative father signed an agreement in 1978 which obligated him to provide support and maintenance to a child alleged to be his. *Id.* at 538. Four years later, he moved under sec. 806.07(1)(h) to have that agreement set aside on several grounds, perhaps the most significant of which was the fact that recently performed blood tests positively excluded him as the father. *Id.* at 539–41.

In addressing the merits of his motion, this court recognized that sec. 806.07(1)(h), Stats. requires courts to strike a balance between the competing values of finality and fairness. Moreover, we dismissed the idea that hard and fast rules could be applied to such an analysis:

> Because subsection (h) invokes the sensibilities of the court, the court must consider a wide range of factors, and it is difficult to articulate the criteria on which the finding of extraordinary circumstances is based. The court should not interpret extraordinary circumstances so broadly as to erode the concept of

finality, nor should it interpret extraordinary circumstances so narrowly that subsection (h) does not provide a means for relief for truly deserving claimants. A final judgment should not be hastily disturbed, but subsection (h) should be construed to do substantial justice.

*Id.* at 552.

■

We believe that much of the reasoning reflected in that paragraph can be applied with equal force to our analysis today. Determining whether motions under sec. 806.07(1)(h), Stats., have been made within à reasonable time requires a case by case analysis of all relevant factors. This analysis should be guided by the fact that while respect for the finality of judgments is an important concern, the purpose of sec. 806.07(1)(h) is to allow courts to do substantial justice when the circumstances so warrant.

What factors are "relevant" to the reasonableness inquiry will of course vary from case to case. Several federal courts, faced with the question, have divided the inquiry into two categories of analysis: the basis for the moving party's delay, and prejudice to the party opposing the motion. *United States v. Boch Oldsmobile, Inc.,* 909 F.2d 657, 660–61 (1st Cir. 1990); *In re Whitney-Forbes, Inc.,* 770 F.2d 692, 697–98 (7th Cir. 1985).[5] The court of appeals in this case adopted this methodology.

We agree that any credible evaluation of a motion's timeliness will necessarily consider the reasons for the moving party's delay as well as the prejudice visited upon the non-moving party. As a result, the two-part analysis utilized by these courts can be a useful way of

---

[5] These cases deal with motions brought under Fed. R. Civ. P. 60(b), the federal rule upon which sec. 806.07, Stats. is based.

marshalling the analysis. Nonetheless, we believe the rule we have articulated better reflects the need for courts to engage in a comprehensive review of all factors relevant to the "reasonableness" inquiry.

In some instances, such factors will include those "extraordinary circumstances" which justify relief on substantive grounds. This is not to say that all the "extraordinary circumstances" in a case will factor into the "reasonable time" inquiry, nor does it mean that a motion will be timely whenever "extraordinary circumstances" exist. The point is that the two analyses, while separate, cannot be completely divorced.

We believe the trial court understood this, and properly applied the correct analysis. The record indicates that it was intimately aware of all the relevant facts. It heard firsthand Cynthia's testimony that she had been intimidated by the entire process. It knew of her lack of experience with both the legal process and with blood testing of this type. Thus, the trial court's description of Cynthia as "unsophisticated" was not a random epithet, but a factually-grounded conclusion based on the record and observation.

The trial court noted that it was the assistant district attorney who decided to drop the original paternity suit, and that this professional advised Cynthia how accurate the blood tests were, and how she did not have a case unless new tests were performed. The court heard her testify that another professional, Dr. Polesky, told her essentially the same thing in 1980.

The trial court also concluded that Cynthia could not afford new blood tests at the cost cited to her by the assistant district attorney. In so finding, the court had at its disposal detailed summaries of Cynthia's income and expenses for the period.

628

Moreover, the trial court explicitly found that Michael would not suffer prejudice if the motion were granted. Its reasoning in that regard is detailed in its "Conclusions of Law" and is supported by the record. It relies on the facts that at no time was any man other than Michael alleged to be Nathanael's father, that the blood tests that now identified Michael as the father were based on the same technology as those originally performed in 1979, and that Michael elected not to present any evidence of prejudice.

Finally, the trial court properly acknowledged that the "reasonableness" question in this case arose in the context of a paternity suit. Courts have recognized that in such cases, circumstances may exist that contribute to a mother's delay in pursuing a paternity action. For instance, in *Clark v. Jeter,* 486 U.S. 456, 463–64 (1988) the United States Supreme Court held that statutes of limitation in paternity actions must reflect the fact that only as her child grows older might a mother realize a heightened need for financial support from the child's father:

> A mother might realize only belatedly 'a loss of income attributable to care for the child' . . . 'Furthermore, financial difficulties are likely to increase as the child matures and incurs expenses for clothing, school, and medical care.' (citations omitted)

In this respect it bears repeating that here, the new blood tests were performed after an acquaintance asked Cynthia how she intended to finance Nathanael's college education.

■

For all these reasons, we believe the trial court did not erroneously exercise its discretion when it found that Cynthia brought her motion within a reasonable

time. The record reflects that its decision was based on a thorough consideration of all relevant factors. In fact, the court of appeals' analysis was, in comparison, unduly narrow. By focussing solely on the economic factors behind Cynthia's delay, the court of appeals ignored the important and relevant non-economic factors relied upon by the trial court.

Michael argues that several Wisconsin cases, in particular, *Rhodes v. Terry,* 91 Wis. 2d 165, 280 N.W.2d 248 (1979) indicate that the reasonable time requirement of sec. 806.07(2), Stats., is a "threshold" analysis completely independent from the "extraordinary circumstances" test of *M.L.B.* We do not agree. In fact, to the degree that *Rhodes* is relevant at all to this discussion, it supports our view that "reasonableness" can only be determined after a thorough review of all relevant facts.

In *Rhodes,* the defendant, Dr. Terry, failed to respond to a summons within the necessary period of time. *Id.* at 168–69. As a result, the trial court entered default judgment in favor of the plaintiff. Then, over six months later, Dr. Terry moved to have the default judgment vacated on the grounds of excusable neglect, pursuant to sec. 806.07(1)(a), Stats. *Id.* at 169. Unlike motions made under sec. 806.07(1)(h), however, motions brought pursuant to sec. 806.07(1)(a) are subject to the additional requirement that they be brought "not more than one year after the judgment was entered . . .." Section 806.07(2).

This court held that even though Dr. Terry's motion was made within one year from the date of judgment, it nonetheless failed the reasonable time requirement. In so doing, we explained that the one year time limit served as a "statute of limitations" which established the maximum time within which a

motion could be made. Compliance with that maximum time, however, did not necessarily mean that the motion was brought within a reasonable time. *Id.* at 171. Rather, the reasonable time requirement was an additional criteria added by the legislature to shorten the time period for which motions under sec. 806.07(1)(a) could be filed. *Id.* at 173.

While *Rhodes* dealt with a motion for relief under sec. 806.07(1)(a), Stats. rather than sec. 806.07(1)(h), it nevertheless illustrates a fact-intensive "reasonable time" inquiry similar to that which we apply today. For example, in upholding the dismissal of Dr. Terry's motion, this court emphasized that he was a highly-educated medical doctor not unfamiliar with the legal process, that he was represented by independent legal counsel who had made several unavailing attempts to get him to respond to the suit, and that the plaintiff would be prejudiced if relief were granted. *Id.* at 174–75. Significantly, none of those factors are present here. Cynthia was not familiar with the legal process, her attorney in the original paternity suit, the assistant district attorney, had interests other than Cynthia's to consider,[6] and there is no evidence that Michael will be prejudiced if the motion is granted.

Michael's attempts to analogize the "reasonable time" requirement of sec. 806.07(2) Stats. to statutes of limitation are equally inapt. Statutes of limitation

---

[6] The trial court concluded that Cynthia had been denied effective assistance of counsel during the original paternity proceedings for several reasons. First, the assistant district attorney bringing the action was statutorily required to consider not only Cynthia's interests, but the interests of Michael and the state as well. Second, he failed to advise Cynthia that she could have had further blood tests performed at no additional cost to herself.

establish "bright line" time constraints which courts cannot freely ignore. Motions under sec. 806.07(1)(h) are not subject to such bright-line rules. This distinction is abundantly clear from the structure of sec. 806.07(2) itself, which establishes a one-year maximum time limit for some motions, while subjecting motions made under sec. 806.07(1)(h) only to a "reasonableness" requirement.

In summary, the trial court did not erroneously exercise its discretion when it found that Cynthia brought her motion for relief within a reasonable time.

*By the Court.*—Decision of the court of appeals reversed.