COURT OF APPEALS
DECISION
DATED AND FILED

January 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1877**

Cir. Ct. No. **2010FA525**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN RE THE MARRIAGE OF:

KIMBERLY UTGAARD N/K/A KIMBERLY ANDERSON,

    JOINT-PETITIONER-APPELLANT,

  V.

STUART UTGAARD,

    JOINT-PETITIONER-RESPONDENT.

---

APPEAL from an order of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Eight years after the parties' divorce, Kimberly Anderson filed various motions with the circuit court to reopen the divorce judgment and to enforce its terms. She now appeals that part of a circuit court order entered on August 14, 2019, denying her request for reimbursement of uninsured medical expenses and variable costs, claiming the court erred by imposing conditions for reimbursement that were not included in the divorce judgment. She also argues the court erred by relying on WIS. STAT. § 806.07 instead of WIS. STAT. § 767.127 (2017-18)[1] when denying her motion to reopen the property division. Finally, she argues the court erroneously exercised its discretion in ordering Utgaard to pay less than the amount of attorney fees she incurred and requested. We reject Anderson's arguments and affirm.

## BACKGROUND

¶2     The parties were married on May 24, 1992 and had four minor children at the time of their divorce on March 3, 2011. The parties were both self-represented during their divorce proceedings, and the divorce judgment incorporated the terms of their marital settlement agreement ("MSA") and their divorce and child support agreement. A joint financial disclosure statement was filed listing, as relevant here, that Utgaard owned two life insurance policies, "NWML 7394266" and "NWML 6903234," and representing that neither account had any cash values.

¶3     As relevant to this appeal, the MSA provided that uninsured medical expenses and variable costs incurred for their minor children would be shared

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

equally. The parties agreed to consult with one another before incurring variable costs. In addition, a party's request to the other for reimbursement of variable costs was required to be made "in writing within 30 days from the day the cost was incurred," with the non-incurring party reimbursing the other for their one-half share "within 10 days from the date of the request." Requests for uninsured medical expenses were also required to be made in writing, but they were not required to be made within thirty days after the medical expenses were incurred, and they were to be reimbursed within ten days after receiving a written request.

¶4      The parties also agreed to equally share expenses regarding insurance, uninsured medical expenses, dental/orthodontics, schooling, automobiles, and other expenses of the children. A party's request for reimbursement of these additional child-related expenses was payable by the 20th of each month.

¶5      From the date of divorce until late 2012, Anderson made written requests for reimbursement of medical expenses, other child expenses, and variable costs, but she then stopped making further requests because Utgaard was being "argumentative." The parties' daughter testified at a contempt hearing regarding an incident in which Utgaard pulled out a gun at the home during an altercation when Anderson requested child support payments. The parties disagree as to what actually occurred during that incident.

¶6      On October 19, 2018, Anderson filed a motion for remedial contempt against Utgaard, alleging that he had violated the divorce judgment by

failing to pay child support, variable and uninsured medical expenses, spousal maintenance, and a 2010 income tax liability of $24,307.54[2] to be shared equally by Utgaard and Anderson. Anderson sought reimbursement for a total of $144,000 in expenses dating back to the date of the divorce. Anderson also alleged that Utgaard had failed to annually provide his tax returns or business financial information to her as required by the divorce judgment.

¶7 After an April 11, 2019 hearing, the circuit court found Utgaard in contempt for nonpayment of $3,201.56 in child support and $19,948 in spousal maintenance. The court further acknowledged that the parties' MSA required them to share equally in the cost of uninsured medical and variable expenses. However, the court found that Anderson failed to provide credible evidence of the amounts she claimed that she incurred for those expenses.

¶8 Specifically, the circuit court found that Anderson provided written demands for reimbursement of the children's uninsured medical and variable expenses from March 2011 through June 2012, but she provided no supporting documentation regarding the expenses. Further, the court found that Anderson offered no evidence verifying that she made any written demand of Utgaard between March 2011 and June 2012 for reimbursement of any expenses she claimed to have incurred for the children, and that "[h]er testimony regarding the [claimed expenses] was incomplete and unconvincing." The court also noted that "[h]ad this been an ordinary debtor action, [Anderson]'s claim would have been stale as the statute of limitations [had] expired." Finally, the court was unwilling

---

[2] In late 2010, Utgaard sold his whole life insurance policy that resulted in a tax liability of $24,307.54 for both parties. Anderson paid the full $24,307.54 in taxes to avoid any penalties, and now claims reimbursement for that entire sum.

to accept Anderson's testimony with only her memory as the sole evidence supporting her claim for past variable and uninsured medical expenses.

¶9 Additionally, the circuit court found that Utgaard was not ordered by the divorce judgment to share in the 2010 income tax liability and that no continuing contempt existed for his failure to supply financial records because he had cured any alleged noncompliance by producing the financial records after the contempt motion was filed. Lastly, the court awarded Anderson $3,000 in reasonable attorney fees because of "the size of the delinquency, the length of time it persisted and the litigation that was necessary to adjudicate the matter." The court did not award Anderson the full amount of attorney fees she had incurred and requested because she did not prevail on all of her claims.

¶10 On April 4, 2019, Anderson filed another motion for remedial contempt and/or reopening the property division in order to award her one-half of the cash balances of the life insurance policies that were awarded to Utgaard in the divorce judgment's property division. Anderson also asked that Utgaard be found in contempt for having failed to carry a $100,000 life insurance policy with Anderson named as the beneficiary. Anderson also sought attorney fees.

¶11 On May 20, 2019, Anderson filed a motion for reconsideration. As relevant to this appeal, Anderson argued the circuit court erred by rejecting her claim for unreimbursed variable and medical expenses. Again, the court found that Anderson failed to meet her burden of proof because she provided no documentation to substantiate her claim. Anderson provided no invoices, receipts, canceled checks, or any other type of documentary proof to support her demand for reimbursement. In addition, the court found that Anderson failed to meet her burden of proving her compliance with the MSA because she made no written

payment demands after June 2012, and her testimony regarding the expenses in question was insufficient. The court therefore denied Anderson's motion for reconsideration.

¶12 In its decision and order, the circuit court first addressed one topic from Anderson's earlier contempt motion, which related to withheld proceeds from the sale of a stainless steel Flair Fountain. The court found Utgaard in contempt for withholding one-half of the sale proceeds because the fountain was the parties' joint personal property. On that issue, the court ordered Utgaard to pay Anderson $2,250, plus $500 in attorney fees.

¶13 The circuit court next addressed Anderson's motion to reopen the property division. The court found that Anderson's motion was untimely under WIS. STAT. § 806.07.[3] The court noted that more than eight years had passed before Anderson filed her motion. The court concluded that the eight-year delay was unreasonable because Anderson knew of the life insurance policies' existence at the time of the divorce, and she could have verified their values at that time. The court was unwilling to reopen or modify the property division after such a significant lapse of time.

¶14 Finally, the circuit court found that from the date of divorce until June 2019, Utgaard willfully failed to carry the required, unencumbered life insurance with Anderson as the named beneficiary. Anderson discovered the noncompliance during the discovery phase of the October 19, 2018 contempt

---

[3] Both Anderson's April 4, 2019 motion for remedial contempt and/or reopening property division as well as the circuit court's decision and order did not specify a subsection. Both addressed WIS. STAT. § 806.07 only. Presumably, both meant subsection (2) as that is the subsection pertaining to timeliness of filing a motion.

6

motion. Although Utgaard later obtained the insurance and kept it unencumbered, the court determined the contempt had continued during the earlier period[4] because he was required to continuously maintain an unencumbered policy for Anderson's benefit. The court permitted Utgaard to purge his contempt by maintaining the required insurance and paying reasonable attorney fees related to the life insurance matter within sixty days. Anderson now appeals.

## DISCUSSION

### I. *Uninsured Medical and Variable Expenses*

¶15    Anderson argues the circuit court erred in failing to enforce the terms of the MSA, the divorce judgment and the child support agreement by denying her request for uninsured medical and variable expenses incurred for the parties' children. The interpretation of a marital settlement agreement, which is "in the nature of a contract," is a question of law we review de novo. ***Rosplock v. Rosplock***, 217 Wis. 2d 22, 30, 577 N.W.2d 32 (Ct. App. 1998). When the terms of a contract are unambiguous, we will construe the contract as it stands without examining extrinsic evidence to determine the parties' intent. ***Id.*** at 31. Whether a contract is ambiguous also presents a question of law for our independent review. ***Borchardt v. Wilk***, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990). Trial courts, not appellate courts on review, weigh the sufficiency of the evidence and judge the credibility of witnesses. ***Mecha v. Mecha***, 36 Wis. 2d 29, 35, 152 N.W.2d 923 (1967). Here, we conclude the MSA is unambiguous because

---

[4] The court noted that "[p]urchasing insurance in response to a contempt motion does not cure the fact that for eight years Mr. Utgaard disregarded his court-ordered obligation and put Ms. Anderson's financial health at risk."

it is not reasonably susceptible to more than one meaning, *see* ***Ford Motor Co. v. Lyons***, 137 Wis. 2d 397, 460, 405 N.W.2d 354 (Ct. App. 1987), and we therefore apply its plain language as written.

### A. *Medical, Dental and Insurance expenses*

¶16    Anderson first asserts that the circuit court erred by concluding her reimbursement requests for medical, dental/orthodontic, and insurance expenses were stale.  Anderson correctly notes that the judgment of divorce did not contain any specific provision requiring her to request reimbursement of these expenses within a specific period of time after they were incurred.  The judgment required only that reimbursement for the "additional expenses of kids" (which included insurance, medical, dental/orthodontics, school, automobile and other expenses as they arise) was to be paid by the 20th of each month.  Additionally, Anderson contends that even if the medical and dental requests are stale, it was Utgaard's conduct that delayed her written reimbursement requests because Utgaard "accosted, argued with or ignored" her.  She believes that Utgaard did not come to court with clean hands, and he should therefore be prevented from arguing that the requests were stale.

¶17    Anderson's argument ignores the basis for the circuit court's determination that she was not entitled to reimbursement for these expenses. Although the court noted that Anderson's requests were stale, that comment was made in the overall context of Anderson's failure to meet her burden of proof. Anderson provided no documentation to substantiate her claim that she made written reimbursement requests to Utgaard, as required by the judgment.  She provided no supporting invoices, receipts, canceled checks, or any other type of documentary proof that she had incurred these expenses and made a request for

reimbursement other than an exhibit she created consisting of generalized information that the court found insufficient. Anderson has not shown that the court erred by concluding she failed to meet her burden of proof, which conclusion was the primary basis on which the court denied her request for these expenses.

¶18    Anderson also incorrectly claims that the circuit court created a timing requirement that was not included in the MSA for submission of these expenses. The court instead merely found that Anderson was required to have made her reimbursement requests in writing. Indeed, Anderson admitted that she made no written demands for expense reimbursements after June 2012. And, the court found that Anderson's testimony that she had made written demands for reimbursement of the expenses incurred between March 2011 and June 2012 was incredible without supporting documentation. When sitting as the finder of fact, a circuit court is the ultimate arbiter of witness credibility. *See Prezioso v. Aerts*, 2014 WI App 126, ¶41, 358 Wis. 2d 714, 858 N.W.2d 386.

¶19    Anderson claims the circuit court erred by failing to find that Utgaard threatened her and that his unclean hands should prevent him from contesting the failure to submit written claims after 2012. "Unclean hands" is an equitable doctrine that can be used to deny relief to a party if the things from which the party seeks relief are the fruit of his or her own wrongful or unlawful course of conduct. *See* **S & M Rotogravure Serv. v. Baer**, 77 Wis. 2d 454, 467, 252 N.W.2d 913 (1977). The court acknowledged that Anderson stopped making reimbursement demands after June 2012 because Utgaard "refused to pay and because conversations with him were contentious." The court, however, did not err by failing to find the "unclean hands" doctrine applied to prevent Utgaard's reliance on the MSA's requirement for written reimbursement demands because Anderson does not cite any evidence indicating that Utgaard prevented or

discouraged her from continuing to make such written demands. Indeed, she could have made the written demands by mail without any personal contact with Utgaard. Anderson failed to prove that any wrongful or unlawful conduct by Utgaard prevented her from making written demand for reimbursement of these expenses, and, therefore, the "unclean hands" doctrine simply does not apply here.

¶20    In addition, Anderson contends the circuit court erred by requiring that she provide the court with documentation to support the written expense requests when such a requirement did not exist in the MSA. The MSA required written reimbursement requests to Utgaard for insurance and uninsured health and dental/orthodontic expenses she incurred on behalf of their children. Anderson argues that a detailed spreadsheet expense report she created and provided to the court in support of her motion for remedial contempt bolstered her testimony regarding the expenses in question. On that spreadsheet she itemized the charges she sought to be reimbursed, including the dates on which they were incurred, the child for whom they were incurred, the category of the expense, the amount, the vendor, or service provider and the payment method. She claims the court misconstrued the MSA by adding a requirement for documentation supporting her itemization and that, as a result, Utgaard owes her $20,600.32 for unreimbursed medical, dental/orthodontic and insurance costs.

¶21    Anderson is correct that the MSA did not require the parties to provide documentation substantiating their reimbursement requests. Nonetheless, the circuit court could properly require such substantiation in determining whether Anderson met her burden of proof. The court stated that it found Anderson's testimony regarding the expenses "incomplete and unconvincing." Additionally, given the passage of time, the court was unwilling to accept Anderson's testimony regarding her memory as the sole evidence, which was all that her "expense

report" simply repeated. In other words, the court was only requiring Anderson to provide more or better evidence, such as supporting documentation, before it could conclude that she met her burden of proof. There was nothing improper in the court doing so.

### B. Variable expenses

¶22 Anderson next argues the circuit court erred by denying her reimbursement of variable expenses she incurred on behalf of the parties' children. Anderson acknowledges that unlike her requests for the reimbursement of uninsured medical, insurance and other expenses discussed above, the MSA expressly required that requests for variable expense reimbursement be made within thirty days after an expense was incurred. Anderson claims that she requested reimbursement via mail, email, or verbally until late 2012; however, such requests stopped "due to [Utgaard's] abusive and disorderly actions." Thus, she again argues that Utgaard lacks clean hands. Anderson also argues the court again erred by requiring that she substantiate her claim with supporting documentation. Anderson asks us to reverse the court and have it order Utgaard to pay her $51,502.20 for variable expenses, including automobile expenses.

¶23 Anderson's unclean hands argument fares no better here than it did on her claim for uninsured medical and other expenses. Anderson acknowledged that the MSA required her to submit written reimbursement requests within thirty days of the date the variable expenses were incurred. This fact is fatal to her claim for two reasons. First, Anderson acknowledges that she stopped making such written requests in late 2012, which eliminates her right to reimbursement for any expenses thereafter. Second, the court also reasonably found that Anderson's testimony was insufficient to prove that she provided written reimbursement

11

requests between March 2011 and June 2012. Specifically, the court found Anderson's testimony "incomplete" and "unconvincing," and it properly determined that supporting documents were required for the claimed reimbursement of variable expenses in order for Anderson to meet her burden of proof.

## II. Reopening the Property Division

¶24 Anderson contends the circuit court erred by denying her motion to reopen and modify the property division based on the undisclosed cash value of Utgaard's life insurance policies totaling $30,596.76. Our review of a circuit court's decision on a motion to reopen the marital property division is limited to the question of whether there has been an erroneous exercise of discretion. *See State ex rel. Cynthia M.S. v. Michael F.C.*, 181 Wis. 2d 618, 624, 511 N.W.2d 868 (1994). A court properly exercises its discretion if the record shows that there is a reasonable basis for the court's decision. *Id.* Discretion contemplates a process of reasoning which depends on facts that are in the record or are reasonably derived by inference from the record, and that yields a conclusion based on logic and founded on proper legal stands. *Id.*

¶25 WISCONSIN STAT. § 806.07(1) allows a circuit court to reopen a judgment for a variety of reasons, but the "motion shall be made within a reasonable time, and, if based on sub. (1)(a) or (c), not more than one year after the judgment was entered or the order or stipulation was made." Sec. 806.07(2). The circuit court found Anderson's motion to reopen untimely under subsec. (2).

¶26 Anderson asserts that the circuit court erred in determining that her request was untimely under WIS. STAT. § 806.07, and it should have instead considered her request to reopen under WIS. STAT. § 767.127.[5] Section 767.127 does not require a motion to reopen property division of an undisclosed asset to be brought within a specific period of time. The statute provides:

> (1) REQUIRED DISCLOSURE. In an action affecting the family, except an action to affirm marriage under s. 767.001(1)(a), the *court shall require each party to furnish*, on standard forms required by the court, *full disclosure of all assets owned in full or in part by either party separately or by the parties jointly*. Disclosure may be made by each party individually or by the parties jointly. Assets *required* to be *disclosed* include, but are not limited to, real estate, savings accounts, stocks and bonds, mortgages and notes, *life insurance*, retirement interests, interest in a partnership, limited liability company, or corporation, tangible personal property, future interests whether vested or nonvested, and any other financial interest or source.
>
>  ….
>
> (5) FAILURE TO DISCLOSE; CONSTRUCTIVE TRUST. If a party *intentionally or negligently fails to disclose information required by sub. (1)* and as a result any asset *with a fair market value of $500 or more is omitted from the final distribution of property*, the party aggrieved by the nondisclosure may at any time *petition the court granting the annulment, divorce, or legal separation to declare the creation of a constructive trust as to all undisclosed assets*, for the benefit of the parties and their minor or dependent children, if any, with the party in whose name the assets are held declared the constructive trustee. The trust shall include such terms and conditions as the court may determine. The court shall grant the petition upon a finding of a failure to disclose assets as required under sub. (1).

---

[5] We note that Anderson's April 4, 2019 motion seeking to reopen the property division was specifically based on WIS. STAT. § 806.07, but she later wrote to the circuit court citing only WIS. STAT. § 767.127.

WIS. STAT. § 767.127 (emphasis added). Anderson contends that if the court had applied § 767.127, it would have found that Utgaard intentionally or negligently failed to disclose the cash value of his life insurance policies and, thus, the values should be held in a constructive trust.

¶27 Anderson is correct that Utgaard's failure to disclose the life insurance policies would violate WIS. STAT. § 767.27(1) (1995-96). *See Stevenson v. Stevenson*, 2009 WI App 29, ¶23, 316 Wis. 2d 442, 765 N.W.2d 811 (holding that failing to make proper financial disclosure was a violation of WIS. STAT. § 767.27(1)).[6] If the circuit court had found that Utgaard, under that statute, intentionally or negligently failed to disclose the life insurance values, the court would be required to impose a constructive trust as required by § 767.127(5).

¶28 Ultimately, it is immaterial here whether the circuit court applied WIS. STAT. § 767.127 or WIS. STAT. § 806.07 in deciding Anderson's motion because the court found that Utgaard did not fail to disclose the policies. In fact, Anderson acknowledges that Utgaard disclosed the existence of the two policies in the parties' original financial disclosure statement. The MSA also reflects that the policies were disclosed and considered in the divorce proceeding. Although Utgaard represented that the policies had no cash value, Anderson knew the policies existed at that time, and she had the opportunity to confirm whether they had cash values prior to the parties' divorce hearing. The court therefore did not erroneously exercise its discretion by finding that Anderson's eight-year delay in raising the issue regarding the policies' values was not reasonable.

---

[6] WISCONSIN STAT. § 767.27 (1995-96), was renumbered and amended by 2005 Wis. Act 443, §§ 68, 121 and 123, and is now WIS. STAT. § 767.127.

*III. Attorney Fees*

¶29    When a circuit court awards attorney fees, the amount of the award is left to the discretion of the court. ***Kolupar v. Wilde Pontiac Cadillac, Inc.***, 2004 WI 112, ¶22, 275 Wis. 2d 1, 683 N.W.2d 58.  Accordingly, we will uphold the circuit court's determination unless it erroneously exercised its discretion. ***Id.*** We are to give deference to the circuit court's decision because it is familiar with local billing norms and will likely have witnessed first hand the quality of the service rendered by counsel. ***Id.*** We will not substitute our judgment for that of the circuit court, but we will instead explore the court's explanation to determine if the court employed a logical rationale based on the appropriate legal principles and facts of record. ***Id.*** The circuit court can consider the factors enumerated in Wisconsin Supreme Court Rule 20:1.5(a) in determining the reasonableness of attorney fees. ***Id.***, ¶25.  One of these factors includes "the amount involved and the results obtained." SCR 20:1.5(a)(4).

¶30    "[T]he party seeking an award of [attorney] fees should submit evidence supporting the hours worked and rates claimed. *Where the documentation of hours is inadequate, the … court may reduce the award accordingly.*" ***Kolupar***, 275 Wis. 2d 1, ¶31 (citation omitted).  Stated differently, the party submitting the request for attorney fees has the burden to prove the reasonableness of the amount requested after it is questioned. ***Standard Theatres, Inc. v. DOT***, 118 Wis. 2d 730, 748, 349 N.W.2d 661 (1984).

¶31    Anderson argues the circuit court erred by ordering Utgaard to pay a lesser amount of attorney fees than she incurred and requested.  Anderson asserts that she incurred $7,500 in attorney fees just in bringing her first motion, all of which fees arose out of a "common core of facts."  While we discern no question

15

that Anderson was properly awarded attorney fees based on Utgaard's contemptuous conduct under WIS. STAT. § 785.04(1), Anderson cites case law for the proposition that

> a "losing party is not entitled to a reduction in attorney's fees for time spent on unsuccessful claims, if the winning party achieved substantial success and the unsuccessful claims were brought or pursued in good faith" especially where all of the "claims arise out of a common core of facts."

*Rand v. Rand*, 2010 WI App 98, ¶7, 327 Wis. 2d 778, 787 N.W.2d 445 (quoting *Radford v. J.J.B. Enters., Ltd.*, 163 Wis. 2d 535, 550, 472 N.W.2d 790 (Ct. App. 1991)).

¶32     Anderson, however, did not provide the circuit court with any supporting documentation for her attorney fee request.  In fact, the only reference to $7,500 was the last sentence in her memorandum in support of her motion for contempt, which states Utgaard "should also pay attorney fees in the amount of $7,500.00 based on the gross underpayments and [Anderson's] incurred fees."

¶33     The circuit court found Utgaard in contempt for nonpayment of court-ordered child support and maintenance.  Utgaard owed $3,201.56 for child support and $19,948 plus eight percent compound interest for spousal maintenance.  In light of the court's determination that Anderson failed to follow the MSA's requirements for seeking expense reimbursement, her failure to meet her burden of proof on the sought-after expenses, and her lack of diligence in verifying the life insurance policies' cash values when she knew of the policies' existence, the court could reasonably reduce the amount of the fees sought by Anderson to $3,000, as she was not successful on all claims.  While the court could award all fees sought, in its discretion, Anderson provides no authority

16

stating the court was required to do so. Additionally, the court's determination of the fee calculation was reasonable, especially given that Anderson provided no other method for calculating fees.

¶34 In Anderson's reply brief, she acknowledges that she did not provide an underlying factual basis to support her claim for $7,500 in attorney fees, but she nonetheless argues that the circuit court did not request specific evidence to support her claim. The court, however, was not required to do so, as Anderson had the burden in the first instance to prove the reasonableness of the fees she sought. *See **Standard Theatres***, 118 Wis. 2d at 748.

## CONCLUSION

¶35 For all the foregoing reasons, we reject Anderson's argument that the circuit court erred by not ordering reimbursement for uninsured medical and variable expenses. We also conclude the court reasonably exercised its discretion by denying Anderson's motion to reopen the property division and by declining to award Anderson the full amount of attorney fees she sought. Accordingly, we affirm.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

17